Mrs. J. T. SPARKMAN et al., Appellants,

v.

Mary Louise MAXWELL et al., Appellees.

No. 17481.

Court of Civil Appeals of Texas,
Fort Worth.

June 7, 1974.

Rehearing Denied July 12, 1974.

Fillmore, Lambert, Farabee & Purtle, and Glynn Purtle, Wichita Falls, for appellant, Mrs. J. T. Sparkman.

H. P. Hodge, Jr., City Atty., Wichita Falls, for appellant, City of Wichita Falls.

Kearby Peery, Wichita Falls, for appellees, Mary Louise Maxwell and others.

## OPINION

BREWSTER, Justice.

Mary Louise Maxwell and husband, plaintiffs, sued Mrs. J. T. Sparkman and the City of Wichita Falls, defendants, for damages for personal injuries and property damage resulting from an automobile collision that occurred at a street intersection in the City of Wichita Falls, Texas. Mrs. Sparkman filed a third party complaint over against the City of Wichita Falls wherein she sought indemnity and in the alternative, contribution from the City of Wichita Falls for any damages found to be due and owing to plaintiff. Following a trial by jury, judgment was rendered that the plaintiffs recover from Mrs. Sparkman and the City of Wichita Falls $5,217.00, and that an intervenor recover from Mrs. Sparkman $1,042.42. The two defendants have appealed from that decree.

The judgment against Mrs. Sparkman is affirmed. The judgment against the City of Wichita Falls is reversed and here rendered that the plaintiffs and the defendant, Mrs. Sparkman, take nothing as against the City.

The jury found that Mrs. Sparkman (1) did not fail to keep a proper lookout; (2) that her act in entering the intersection while a red arrow was facing her was a proximate cause of the collision; (3) and that her act in entering the intersection on a red arrow was not negligence.

We will refer to the City of Wichita Falls throughout this opinion as City.

Judgment on the verdict could only have been rendered against Mrs. Sparkman on the theory that her act of entering the intersection while a red arrow was facing her was negligence per se and that when the verdict established that such act on her part was a proximate cause of the collision, that liability was thus fixed against her for the damages resulting from the wreck.

### Mrs. Sparkman's Appeal

Mrs. Sparkman's first point of error is that the court erred in entering judgment against her because the red arrow signal facing her was illegal and cannot form the basis for a statutory violation.

Her fourth point of error is that the trial court erred in overruling her motion for judgment. In that motion she simply moved the court to enter an attached judgment. The form of that proposed judgment was such that it would deny plaintiffs a recovery from Mrs. Sparkman, but would award them a recovery from the City.

We overrule Mrs. Sparkman's points of error Nos. 1 and 4.

On the occasion in question, on April 14, 1972, Mrs. Maxwell was traveling south on Fairway Street. Mrs. Sparkman was going east on Southwest Parkway and planned to turn left at the intersection into Fairway and go north. The traffic was controlled at the intersection of these two streets by electric traffic-control lights. Traffic in the left turn lane on Southwest Parkway was controlled by a signal light located on a median in the center of such street facing that lane of traffic. This signal light had three round signal lights in it, located in a vertical line. The top one was red, the center one was yellow and the bottom light was green. Inside the lens of each of these three signals had been placed a metal template, the effect of which was to make the signal be in the form of an arrow instead of in the form of a round signal light. So, regardless of the color of the signal light that faced the traffic in the left turn lane on Southwest Parkway at this intersection, it would be in the form of an arrow pointing to the left or to the north on Fairway. The signal light functioned by changing from a red arrow, to a yellow arrow, and then to a green arrow at designated intervals of time.

When Mrs. Sparkman came up to this street intersection going east and traveling in the left turn lane, there was then facing her a red traffic light in the form of an arrow pointing to the left or north on Fairway. She did not stop at the intersection but slowly pulled out into it and there collided with Mrs. Maxwell's car which was coming from the north on Fairway.

Mrs. Maxwell had entered the intersection on the green light that faced traffic coming from the direction she came from.

Mr. Whitnell, director of traffic and traffic engineer for the City of Wichita Falls had ordered the installation of these traffic control signals, and at such time he was acting as agent for the City and within the scope of his authority. He had ordered these lights in the form of arrows installed as a test. He was making the test for two reasons, namely: (1) he expected the 1971 Federal Manual on Uniform Traffic Control Devices for Streets and Highways, which expressly provided for red arrow signals, to be adopted later in Texas, and (2) he desired to determine which of two options, red arrow signals or information by signs on signal poles, should be used in the future.

The facts recited above are undisputed.

■ We are convinced and hold that the signal lights or arrows controlling traffic in the left turn lane in which Mrs. Sparkman had been traveling were not illegal under the laws and manuals that were in effect at the time of the car wreck on April 14, 1972.

Article 6701d—3, Vernon's Ann.Civ.St., provides: "In any civil case . . . proof by either party . . . of the existence of any traffic control device, including . . . control lights . . . on or alongside any public thoroughfare shall constitute prima facie proof of all facts (including proof of competent authority and a duly enacted ordinance by municipalities . . .) necessary to prove the proper, lawful installation of such sign or device at that place. . . . The prima facie proof . . . may be rebutted . . . . ."

The undisputed evidence showed the existence of the signal light at the intersection in question at the time of the wreck. No evidence was offered by anyone tending to show that the traffic signal was not placed there by competent authority and as

a result of a duly enacted ordinance of the City. The existence of these facts were therefore established by the presumption created by the statute.

Article 6701d, Art. III, Sec. 29, provides: "The State Highway Commission shall adopt a manual and specifications for a uniform system of traffic-control devices consistent with . . . this Act for use upon highways within this state."

The undisputed ·evidence in the case and the briefs of the parties show that the 1967 Texas Manual on Uniform Traffic Control Devices for Streets and Highways is the manual that had been adopted by the State Highway Commission by authority of Art. 6701d, Sec. 29, V.A.C.S., that was in full force and effect at the time of the wreck in question.

Evidence was offered in the trial as to the provisions of the 1971 manual, but since the undisputed evidence showed that the effective date of its adoption (June 1, 1972) was not until after the date of the wreck, its provisions could have no bearing on the legality of the traffic signals involved.

Section 31, Art. 6701d, V.A.C.S., authorizes local authorities to install traffic control devices as they deem necessary to carry out the provisions of this statute, which devices shall conform to the manual and specifications that Sec. 29 of the statute directed the State Highway Commission to adopt.

Whether the traffic control signal was illegal hinges on whether that signal conformed to Art. 6701d and to the 1967 Texas Manual above referred to.

Article 6701d, Sec. 33, V.A.C.S., provides: "Whenever traffic is controlled by traffic-control signals exhibiting . . . different colored lights successively one at a time, *or with arrows*, the following colors only shall be used and said terms and lights shall indicate and apply . . . as follows:

"(a) Green alone or 'Go.'

" . . .

"(b) Yellow alone or 'Caution' . . .

" . . .

"(c) Red alone or 'Stop.'

"1. Vehicular traffic facing the signal shall stop before entering . . . the intersection . . . and shall remain standing until green or 'Go' is shown alone.

"(d) Red with green arrow.

"1. Vehicular traffic facing such signal may cautiously enter the intersection only to make the movement indicated by such arrow . . . . " (Emphasis ours.)

In discussing the red and yellow signals the statute does not designate the shape such signals shall have. It does not provide that such signals shall be round, shaped like an arrow, or how they shall be shaped. There is nothing in the statute that would make it illegal to have the red signal in the shape of an arrow. In fact, the first paragraph of Section 33 is worded so as to provide, in substance, that if traffic is controlled by traffic control signals exhibiting different colored lights successively one at a time or with arrows, that only the colors green, yellow and red shall be used, and that green shall mean go, yellow shall mean caution, and red shall mean stop.

The 1967 Texas Manual on Uniform Traffic Control Devices has no provision that would prohibit the use of a red arrow. It states that color and arrow indications in traffic control signals shall have the meanings ascribed to them in Art. 6701d. Therefore, the reasoning applicable to the statute would apply with equal force to the Texas Manual.

Neither Art. 6701d nor the 1967 Texas Manual impliedly prohibits a red or a yellow signal from being in the shape of an arrow. They do not impliedly prevent the use of red and yellow arrows any more than they would impliedly prevent the use

of circular red and yellow signals. In this connection it is noted that the Texas Manual does make reference to both circular green signals and to green arrow signals, but it makes no reference at all to the shape that the red and yellow signal lights shall have.

■■ We hold that when Mrs. Sparkman drove into the intersection at a time when the red light in the form an arrow faced traffic in her lane, that she violated Art. 6701d, Sec. 33, Subsec. (c), par. 1, V. A.C.S. Her violation of that statute was negligence per se unless the evidence in the case raised an issue as to whether she had a legally sufficient excuse for running the red light. See Martinez v. Hernandez, 394 S.W.2d 667 (San Antonio Civ.App.1965, writ ref., n. r. e.), and the cases cited in 7 Tex.Jur.2d 541, Automobiles, Sec. 190.

Mrs. Sparkman contends in her second point of error that the trial court erred in disregarding the jury's answer to an issue finding that she was not negligent in entering the intersection on the red arrow, and she contends in her third point of error that the trial court erred in rendering judgment against her because the jury's finding that she was not negligent amounted to a finding that she had an excuse for entering the intersection on the red arrow.

We overrule these two points.

Although the undisputed evidence showed as a matter of law that Mrs. Sparkman violated the statute by going into the intersection on a red light, the trial court, in an abundance of precaution, submitted an issue to the jury inquiring whether Mrs. Sparkman's act of entering the intersection on a red arrow signal was negligence. The jury did not solve the trial court's problem, for they answered such issue "No." The trial court then ignored this finding in rendering the judgment against Mrs. Sparkman.

■ The burden of proof on the negligence issue was on the plaintiff, but once it had been established that Mrs. Sparkman

had violated the statute by entering the intersection on a red light, the burden of going forward with the evidence and to raise a fact issue as to an excusable violation was on Mrs. Sparkman. Phoenix Refining Co. v. Powell, 251 S.W.2d 892 (San Antonio, Civ.App.1952, writ ref., n. r .e.).

The question before us is whether the evidence in the case raised a fact issue as to whether Mrs. Sparkman had a legally sufficient excuse to run the red traffic signal light upon the occasion in question.

Not all excuses are legally sufficient to excuse a person from violating the statute involved by running a red light. A yardstick for making the determination as to whether or not the excuse is legally sufficient to excuse the statutory violation is set out in Impson v. Structural Metals, Inc., 487 S.W.2d 694 (Tex.Sup.1972) as follows:

"The Restatement of Torts, Second (1965), deals with this problem in a new section, 288A. It states that an excused violation of a legislative enactment is not negligence. While the section expressly says that the list of excusable situations given is not intended to be exclusive, it lists five categories. They are:

" '(a) the violation is reasonable because of the actor's incapacity;

" '(b) he neither knows nor should know of the occasion for compliance;

" '(c) he is unable after reasonable diligence or care to comply;

" '(d) he is confronted by an emergency not due to his own misconduct;

" '(e) compliance would involve a greater risk of harm to the actor or to others.' "

The evidence here that Mrs. Sparkman relies on as constituting a legally sufficient excuse is the following: the signal light facing her as she pulled into the intersec-

tion was a red arrow pointing to the north up Fairway Street; she did not realize that the arrow was red but just recognized it as an arrow pointing in the direction she was going; she is not color-blind; she had been at this intersection many times before; she drove into the intersection, realized that something was wrong, and stopped in the intersection and read the sign saying turn to Fairway and started up again; she figured that since the arrow was pointing in her direction that she should go; prior to the installation of the three arrows (red, yellow, and green) the signal there had been a green arrow at this point; Mr. Whitnell, the Wichita Falls Traffic Engineer, testified that during his six years' experience in Traffic Engineering he had never seen used in Texas an arrow that was colored either red or yellow; he had put these three arrows in as a test and left them up for 8 days and observed them daily, watching the public's reaction to them; no advance publicity was given about their installation; 50% of the public reacted, when seeing the arrows, as if they were seeing something for the first time, and he saw two drivers run the red arrow; two other officers testified they had never seen a red arrow traffic signal used in Texas before; Mrs. Sparkman testified that she had been taught that green meant to go and red meant to stop; but she had no thought of this arrow being red; and when the arrow came on, since she had always before turned on an arrow, she turned on this red one.

■ We hold that this evidence did not raise a fact issue as to whether or not Mrs. Sparkman had a legally justifiable excuse upon the occasion in question for entering the intersection on the red arrow.

The fact that she was confused as to the meaning of the red traffic signal light that faced her was not a legally sufficient excuse for her action in violating the statute.

The following is from the Restatement of the Law of Torts, Sec. 289, p. 771: "Illustration: 9. A, driving an automobile, approaches a strange town in which the signals in use are different from those to which he is accustomed. It is negligent to go on without ascertaining the meaning of these strange signals."

The judgment rendered against Mrs. Sparkman is affirmed.

### The Appeal of the City of Wichita Falls

The City's first point of error is that the trial court erred in rendering judgment against it because its employees involved were at all times engaged in the performance of a governmental function and the City is for that reason, under the facts of this case, immune from liability to the other parties to the suit.

We sustain this point.

■ It is established law in Texas that the maintenance and operation of an electric traffic control signal is a governmental function, as being an incident to a city's policing activities. And prior to the effective date of the Texas Tort Claims Act on January 1, 1970, a city was not liable for torts of its employees committed while engaged in such a function. Parson v. Texas City, 259 S.W.2d 333 (Fort Worth Civ. App., 1953, writ ref.).

Article 6252–19, V.A.C.S. is the Texas Tort Claims Act. Judgment was here rendered against the City on the theory that such recovery was authorized by that statute.

The question raised by the City's first point is whether the Texas Tort Claims Act abrogated the governmental immunity doctrine in so far as the City's liability for personal injuries proximately caused by negligence of its employees in the installation and operation of the traffic control signal light involved here is concerned. Apparently no cases have been decided in Texas on this point.

The extent to which a unit of government is now subject to liability for which it

formerly had governmental immunity is set out in Sec. 3 of Art. 6252–19, V.A.C.S. (The Texas Tort Claims Act). Paraphrasing that section it provides that the city shall be liable for money damages for personal injuries when proximately caused by the negligence or wrongful act or omission of its employee committed while acting within the scope of his employment from some condition or some use of tangible property, real or personal, under circumstances where the city, if a private person, would be liable to the claimant in accordance with the laws of this state. The liability is created by Sec. 3 of the Act and Sections 14 and 18 provide some exemptions and exclusions from the liability that is created by Section 3.

In this case, the basis of the claims against the City by the other parties arose out of negligence by its employees in the use of tangible, personal property while acting within the scope of their employment. Section 3 would therefore impose liability on the City for damages for the personal injuries caused by the negligence unless the particular fact situation we have here comes under one of the exemptions or exclusions from liability that are provided for in Sections 14 and 18 of the Act.

Section 14, Subsection 12, is the only one of the exemptions or exclusions provided for in the Act which could have any materiality here and it provides as follows:

## "EXEMPTIONS

"Sec. 14. The provisions of this Act shall not apply to:

". . .

"(12) Any claim arising from the absence, condition, or malfunction of any traffic . . . signal, or warning device unless such absence, condition, or malfunction shall not be corrected by the governmental unit responsible within a reasonable time after notice, . . . ."

■ The claims made here against the City did not arise from the absence or mal-

functioning of the traffic signal light. The evidence showed that the lights were actually installed and were working as they were designed to work upon the occasion in question.

The Random House Dictionary of the English Language (copyrighted in 1966, unabridged edition) defines "condition" as being "particular mode of being of a person or thing" or "existing state."

The "particular mode of being" of the traffic signal light involved and "its existing state" was that it had a red signal in the shape of an arrow. The claims made here by the plaintiff and also by Mrs. Sparkman against the City therefore arose from the condition of the traffic signal light in question.

We hold that, because of the provisions contained in Subsection 12 of Section 14 of the Texas Tort Claims Act, such Act does not apply to the claims urged herein against the City by the other parties to this suit. Since the claims urged by the other parties herein against the City are exempt from the operation of the Texas Tort Claims Act, the decision of this case is still governed by the holding in the Parson v. Texas City case, supra. . In other words, the claimed negligence of the City's employees was committed while they were engaged in the scope of their employment in the performance of a governmental function. The City, under the facts of this case, is not liable to the other parties to this suit for the torts of its employees because such torts were committed while they were engaged in the performance of a governmental function.

■ The plaintiffs urge in their second counter-point that the traffic light in question was illegally maintained by the City and that it therefore constituted a public nuisance for which the City would be liable under the Tort Claims Act. We overrule that point. We have held that the traffic signal was legally installed and it was therefore not a nuisance.

The result of our holding on the City's first point of error is that we must reverse the judgment rendered against the City and render judgment denying the other parties to the suit any recovery in this case against the City.

The City urges two additional points of error. If our holding on the City's first point of error is correct, then these other two points are immaterial. We will express our ruling herein on these other two points, without discussion, so that in the event it is determined that our holding on the City's first point is wrong it will not be necessary to send the case back to us for a ruling on those two points.

The City's second point of error is that the trial court erred in rendering judgment against it because the City could not, as a matter of law, be negligent for erecting a traffic control signal which conforms to the Manual on Uniform Traffic Control Devices for Streets and Highways, which manual was promulgated by the U.S. Department of Transportation as a set of standards to be used on all Federal Highways.

We overrule that point.

The City's third point of error is that the trial court erred in admitting into evidence over the City's objection Administrative Order No. 3–72 dated March 10, 1972, issued by State Highway Engineer Dingwall, because this evidence was immaterial and irrelevant to the issues involved, and was highly prejudicial to the rights of the City.

We overrule this point because we are convinced that the record does not show that the matters complained of constitute reversible error.

The judgment rendered herein against the City is reversed and judgment is here rendered that the plaintiffs and the defendant, Sparkman, take nothing as against the City. All costs herein are taxed against the defendant, Sparkman.