Mrs. J. T. SPARKMAN et al., Petitioners,

v.

Mary Louise MAXWELL et al., Respondents.

No. B–4782.

Supreme Court of Texas.

Feb. 19, 1975.

Rehearing Denied March 26, 1975.

Fillmore, Lambert, Farabee & Purtle, Glynn R. Purtle, Wichita Falls, for petitioner.

H. P. Hodge, Jr., Kearby Peery, Wichita Falls, for respondent.

Charles Oldham, Wichita Falls, for intervenor.

WALKER, Justice.

On the principal questions presented by this appeal, we hold that under the evidence: (1) the defendant driver of an automobile was not guilty of negligence as a matter of law in entering an intersection and attempting to make a left turn when the traffic signal controlling her movements showed a red arrow pointing to the left; and (2) the failure of the responsible city to correct the traffic signal within a reasonable time after notice that it was creating a risk of harm to the traveling public subjected the city to liability under the provisions of the Texas Tort Claims Act, Art. 6252–19.[1]

The case arises out of an automobile collision on April 14, 1972, at the intersection of Fairway Street and Southwest Parkway in Wichita Falls. Mrs. Mary Louise Maxwell, plaintiff, was driving north on Fairway, and Mrs. J. T. Sparkman, one of the defendants, had been driving east on Southwest Parkway. Mrs. Sparkman planned to turn left at the intersection and drive north on Fairway. She entered the left-turn lane on Southwest Parkway, which was controlled by a traffic signal facing that lane. As originally constructed the traffic signal consisted of three circular lens, arranged in a vertical line, a red lens at the top, a yellow lens immediately below the red, and a green lens immediately below the yellow. About two weeks before the accident, the Traffic Engineer for the City of Wichita Falls had caused a metal template to be placed inside each lens. An opening in the shape of an arrow pointing to the left was in each template, and the signal thus showed, in sequence, green, yellow and red arrows, all pointing to the left. Below the traffic signal was a sign reading "Left Turn to Fairway." When Mrs. Sparkman entered the left-turn lane on Southwest Parkway, the traffic signal showed a red arrow pointing to the left. After stopping and looking at the sign to be sure she was observing the signal that controlled the left-turn lane, she drove slowly into the intersection and collided with Mrs. Maxwell's automobile, which had entered the intersection on a green light facing traffic proceeding north on Fairway.

Mrs. Maxwell and her husband, plaintiffs, instituted suit against Mrs. Sparkman and the City of Wichita Falls. An insurance carrier intervened to assert a subrogation claim for damage to the automobile driven by Mrs. Maxwell, and Mrs. Sparkman filed an action against the City for indemnity and contribution. In response to the special issues submitted, the jury: (1) found that Mrs. Sparkman's entering the intersection while a red arrow was facing her was a proximate cause of the collision but refused to find that such conduct was negligence or that Mrs. Sparkman was negligent in any other respect; (2) refused to find that the plaintiff, Mrs. Maxwell, was guilty of negligence; (3) found that the collision was proximately caused by the negligence of the Traffic Engineer in installing the red arrow and in failing to warn the public of its installation, and by the negligence of the Traffic Engineer and the City in permitting the installation to remain until April 14.

---

1. All statutes are referred to by the article number under which they appear in Vernon's Ann.Tex.Civ.Stat.

The trial court rendered judgment in Mrs. Maxwell's favor against Mrs. Sparkman and the City jointly, and in favor of the intervenor against Mrs. Sparkman, for the amount of damages found by the jury and supported by the evidence. Mrs. Sparkman and the City appealed to the Court of Civil Appeals, which affirmed the judgment against Mrs. Sparkman but reversed the judgment against the City and rendered judgment that plaintiffs and Mrs. Sparkman take nothing against the City. 511 S. W.2d 566. It is our opinion that the City but not Mrs. Sparkman is liable for the damages to which Mrs. Maxwell is entitled for her personal injuries, and judgment will be rendered accordingly.

The case has now resolved itself into a dispute between Mrs. Sparkman and the City. Mrs. Maxwell filed only a conditional application for writ of error to protect her rights against the City in the event it is determined that she is not entitled to recover from Mrs. Sparkman. Mrs. Sparkman contends at the outset that the Court of Civil Appeals erred in holding that the red arrow traffic signal was legal. The resolution of this question would require a construction of the Uniform Act Regulating Traffic on Highways, Art. 6701d, and the 1967 Texas Manual on Uniform Traffic Control Devices.

Section 29 of Art. 6701d requires the State Highway Commission to adopt a manual and specifications for a uniform system of traffic control devices consistent with the provisions of the Act. Section 31 authorizes local authorities to place and maintain traffic control devices conforming to the State Highway Department's manual and specifications. Section 33 refers to traffic signals "exhibiting different colored lights, or colored lighted arrows."

The 1967 Texas Manual, which was being revised at the time of the accident in this case, was adopted pursuant to Section 29 of Art. 6701d. Several of its provisions were introduced by the City, and Mrs. Sparkman has now forwarded to us a copy of the entire manual with the request that we take judicial notice of all its provisions. The City objects to our taking judicial notice of the manual "as it is not part of the statute."

With the record in this condition, we will assume without deciding that the red arrow signal was legally installed and maintained. We choose that approach because: (1) the question of whether the signal was legal is not of controlling importance in deciding the present case; (2) the 1971 National Manual on Uniform Traffic Control Devices for Streets and Highways became effective in Texas on June 1, 1972, after the accident in this case; and (3) an appellate court is naturally reluctant to take judicial notice of matters such as municipal charters and regulations promulgated by state agencies when the trial court was not requested to do so and was not given an opportunity to examine the necessary source material. See 1 McCormick and Ray, Texas Law of Evidence, 2d ed. 1956, §§ 152, 155. This does not mean that we would refuse to take judicial notice under similar circumstances where necessary to avoid an unjust judgment.

Harold Whitnell, Traffic Engineer and Director of Traffic and Transportation for the City, ordered installation of the traffic signal while acting as agent for the City and in the scope of his authority. He ordered the installation as a test for two reasons: (a) he expected the 1971 National Manual, which expressly provided for red signals, to be adopted in Texas;[2] and (b)

---

2. On March 1, 1972, the Texas Highway Commission passed an order that the National Manual would become effective for use on highways in the State on June 1, 1972, and directed the State Highway Engineer to place in use the current system of uniform traffic control devices contained in the 1971 National Manual except where in conflict with State laws. On March 10, 1972, the State Highway Engineer issued a list of Highway Department standards governing use of the 1971 National Manual on Texas highways. Standard No. 43

he desired to determine whether red arrow signals or signs on signal poles should be used in the future. The signal was installed on April 6, and Mr. Whitnell originally intended to continue the test for two weeks. The signal was removed at the end of eight days and about an hour after the accident in this case. During the period of eight days, Mr. Whitnell made daily observations to determine the response of drivers to the signal. He saw two cars proceed through the red arrow. Other drivers stopped their vehicles but looked around as they did so. On the basis of his observations, it was Mr. Whitnell's impression that the drivers were seeing something they had not seen before. This was the only time to his knowledge that either a red arrow or a yellow arrow had ever been used in Texas. The witness recognized that one of the best ways to achieve safety in the movement of traffic is for the motorist "to be apprised of the rules of the game." The test was nevertheless conducted at a busy intersection without prior notice to the public. Two police officers employed by the City testified that they had never previously seen a red arrow traffic signal.

Mrs. Sparkman testified that the signal facing her as she approached and entered the intersection was a red arrow pointing to the north. She did not realize at the time that it was red, but she did see an arrow pointing in the direction she wished to go. She saw "something was wrong with the light" and for that reason stopped to look at the sign. The sign indicated that she was looking at the proper signal, and she proceeded into the intersection. Since the arrow was pointing in her direction, she decided that she should go ahead. She had no thought of its being red at the time. She had always turned on the arrow, and in this instance the arrow was pointing in the direction she wished to go.

■ In holding that Mrs. Sparkman was negligent as a matter of law despite the jury's refusal to find that her conduct constituted negligence by the common law standard, the Court of Civil Appeals reasoned that the evidence does not raise an issue of fact as to a legally sufficient excuse for her violation of the statute requiring a motorist to stop when facing a red traffic signal. We do not agree. In Impson v. Structural Metals, Inc., Tex.Sup., 487 S.W.2d 694, we discussed excuses for violating a legislative enactment and approved the general rules found in Restatement, Second, Torts § 288 A. One of the recognized excuses is that the actor "neither knows nor should know of the occasion for compliance." As pointed out in *Impson,* this category would include cases where a night driver has a tail light go out unexpectedly and without his knowledge. See Taber v. Smith, Tex.Civ.App., 26 S. W.2d 722 (no writ). The truck driver in *Impson* attempted to pass to the left of another vehicle within 100 feet of an intersection. He admitted that he was aware of the intersection but sought to excuse the violation by proof that he momentarily forgot about the intersection, which was obscured to some extent by trees or houses, and that the sign warning of its presence was small. It was held that the evidence did not raise an issue of a legally acceptable excuse for the violation but showed simply inattention and errors of judgment.

■ The present case is quite different. Mrs. Sparkman was confronted with a traffic signal that she had never seen before, one that evidently had never been used in this state. The evidence shows that other motorists were confused by the signal. If Mrs. Sparkman had taken time for deliberation, she might have decided to stop rather than proceed to the intersection. It was not wholly unreasonable under the circumstances, however, for her to move in response to the direction in which the arrow was pointing rather than stop in response to its color. In our opinion there is no material difference between a situa-

---

prohibits the use of yellow or red arrow signal indications, and Standard No. 56 prohibits the use of yellow arrow, red arrow, flashing walk and flashing don't walk signal indications.

tion in which a driver is reasonably unaware of an event that gives rise to a duty to act as in *Taber* and the present case where the driver may have been reasonably confused by the traffic signal that triggered her duty to stop. This is not to say that confusion on the part of a driver constitutes a legal excuse, but the evidence here will support the conclusion that Mrs. Sparkman's confusion was caused by an unreasonably confusing traffic signal. It was for the jury to determine whether her conduct was reasonable under the circumstances. Where as here the evidence raises an issue of fact as to a legally acceptable excuse, the burden was on the opposite party, Mrs. Maxwell, to obtain a finding by the jury that Mrs. Sparkman was guilty of negligence by the common law standard. Southern Pacific Co. v. Castro, Tex.Sup., 493 S.W.2d 491. Since the jury refused to find that Mrs. Sparkman was guilty of common law negligence, she is not liable to Mrs. Maxwell.

The Court of Civil Appeals relied on Illustration 5 under Restatement, Second, Torts, § 289, as follows:

A, driving an automobile, approaches a strange town in which the signals in use are different from those to which he is accustomed. It is negligent to go on without ascertaining the meaning of these strange signals.

The section under which this illustration is found deals with one of the factors to be considered in determining whether a particular act is or is not negligent, i. e. the duty to recognize the existence of risk "if a reasonable man would do so." Illustration 5 appears under Comment j, which states that it is negligent for a person to act "if a reasonable man would recognize the necessity of making further investigation." The ultimate standard is that of the reasonable man, and we are unable to say as a matter of law that a reasonable person in Mrs. Sparkman's circumstances would not have proceeded without making

further investigation. We hold that the jury's negative answers to the issues inquiring whether Mrs. Sparkman was negligent by the common law standard exonerate her from liability to Mrs. Maxwell.

■ The Court of Civil Appeals sustained the City's contention that it is immune from liability to the other parties to the suit. It is settled that the maintenance and operation of an electric traffic control signal is a governmental function, and prior to the adoption of the Texas Tort Claims Act on January 1, 1970, a city was not liable for the negligence of its employees while engaged in the performance of that function. Parson v. Texas City, Tex.Civ.App., 259 S.W.2d 333 (wr. ref.). The trial court rendered judgment against the City on the theory that recovery is authorized under the facts of this case by the Texas Tort Claims Act, Art. 6252–19. At the time of the accident with which we are concerned, Section 3 of the statute provided, in part, that each unit of government in the state should be liable within the limits there prescribed for personal injuries or death proximately caused by some condition or some use of tangible property, real or personal, under circumstances where such unit of government, if a private person, would be liable to the claimant in accordance with the law of this state. Under the terms of Section 14, the provisions of the Act do not apply to:

(12) Any claim arising from the absence, condition, or malfunction of any traffic or road sign, signal, or warning device unless such absence, condition, or malfunction shall not be corrected by the governmental unit responsible within a reasonable time after notice . . .

■ The Court of Civil Appeals reasoned that while Section 3 would subject the City to liability for the damages sustained by Mrs. Maxwell, her claim arose from the condition of the traffic signal and consequently is excepted from the operation of the Act. An argument is ad-

vanced in an amicus curiae brief that the intentional installation of a traffic signal is the performance of a legislative function excepted from the operation of the statute by Subdivision 2 of Section 14. In our opinion the statute may not be given that construction in view of the specific provisions of Subdivision 12 of Section 14. We agree with the Court of Civil Appeals that the term "condition" in Subdivision 12 refers to either an intentional or an inadvertent state of being, and here the City was notified of the condition of the light and the problems it was causing. Entirely aside from any notice with which it might be charged on account of the Traffic Engineer's daily observations, Police Officer Lofton testified that about six or seven days prior to the accident, his attention was directed to the signal by traffic congestion in the left-turn lane. He moved the traffic through on the red arrow signal. He thought a mistake might have been made in putting a red lens behind the arrow, and he called headquarters on the radio to advise the Traffic Engineer that "they had gotten the wrong colored light out there in the left turn lane." Some two days later, which would be four or five days prior to the accident, Officer Lofton saw a lady almost have a collision when she drove into the intersection on the red arrow. He again called headquarters by radio and advised them to notify the Traffic Engineer to correct the situation. It thus appears that the City had notice in ample time to remove the signal prior to the accident on April 14. In the light of the evidence and the jury's findings, the trial court properly rendered judgment against the City for the damages suffered by Mrs. Maxwell as a result of the personal injuries she sustained in the collision. Since the Texas Tort Claims Act did not, at the time of the accident, subject the City to liability for property damage caused in the performance of a governmental function, the trial court properly rendered judgment that intervenor take nothing from the City.

The judgments of the courts below are reversed, and the cause is remanded to the district court with instructions to render judgment: (1) in favor of Mrs. Mary Louise Maxwell, plaintiff, and against the City of Wichita Falls in the amount of $5,117.00, with interest thereon at the rate of six per cent per annum from May 14, 1973, the date of the original trial court judgment; (2) that plaintiffs take nothing against Mrs. J. T. Sparkman, defendant; (3) that National Farmers Union Property and Casualty Company, intervenor, take nothing from either Mrs. Sparkman or the City; (4) apportioning the costs in the trial court as that court may consider proper; and (5) denying all relief not specifically granted. The costs of appeal are adjudged ⅕ against National Farmers Union Property and Casualty Company and ⅖ each against Mrs. Maxwell and the City.

Dissenting opinion by STEAKLEY, J.

STEAKLEY, Justice (dissenting).

Unwittingly or not, as I see it, the majority has in practical effect rendered impotent the doctrine of negligence per se. Perhaps this is well and good; if so, why not abolish the doctrine?

The majority assumes that the red arrow signal was legally installed and maintained. Everybody has known since traffic signals came into use that traffic stops on red and moves on green, whether the signal is round, or square, or flashing. How can it be said that a driver acts reasonably when the violated red signal is in the form of an arrow? It is undisputed that Mrs. Sparkman violated the signal when she drove into the path of Mrs. Maxwell who was proceeding legally through a green signal. Notwithstanding, the majority says that the jury may find that the conduct of Mrs. Sparkman was reasonable under the circumstances, i. e., that the violation was excused because she was confused. This gets us close to the alternative rule pointed out in 2 Harper & James, Law of Torts 1001,

§ 17.6 (1956), quoted in Impson v. Structural Metals, Inc., 487 S.W.2d 694 (Tex. 1972), that empowers juries "to dispense with reasonable statutory requirements in every case no matter how flimsy the excuse."