Opinion issued August 28, 2018



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-17-00423-CV

———————————

**THE CITY OF HOUSTON, Appellant**

**V.**

**LUCILLE ELLIS AND MARGIE WILLIAMS, Appellees**

---

**On Appeal from the 334th District Court**
**Harris County, Texas**
**Trial Court Case No. 2016-31572**

---

## MEMORANDUM OPINION

This lawsuit arises out of a car accident that occurred when Lucille Ellis proceeded through an intersection without a stop sign. Ellis and her passenger sued the City of Houston, claiming that the City failed to maintain the stop sign at the intersection and caused the accident. The City filed a plea to the jurisdiction,

claiming governmental immunity. The trial court denied the plea. The City appeals, contending that it established that it did not waive its immunity because it did not have notice before the accident that the stop sign was down. Because the material jurisdictional facts are disputed, we affirm.

## BACKGROUND

*The accident*

The accident happened on the afternoon of August 8, 2015. Ellis was driving northbound on Bucknell Road, which is in a residential area of Northeast Houston. Her sister, Margie Williams, accompanied her in the passenger seat. Bucknell Road intersects Calgary Road. Calgary is a main thoroughfare that runs east and west. The Bucknell northbound traffic is typically controlled by a stop sign. The traffic on Calgary does not have a stop sign.

On the day of the accident, Ellis did not see a stop sign and proceeded through the Calgary intersection without stopping. At the same time, a driver in a red car on Calgary approached the Bucknell intersection from the west. The driver of the red car collided with the side of Ellis's car.

Ellis and Williams allege that they were injured in the accident. Ellis further alleges that she did not see the red car approaching the intersection and did not see the stop sign because it was lying on the ground.

*The City's jurisdictional plea*

Ellis and Williams sued the City of Houston for negligence, alleging that the City's failure to maintain the sign caused the accident. The City challenged the trial court's jurisdiction, claiming that it was immune from the suit because the City had no notice that the stop sign was down.

In support of its plea, the City presented deposition testimony from Officer I. Velezdeya of the Houston Police Department. Velezdeya arrived at the accident scene about five minutes after the accident happened. She saw the stop sign, attached to its base, and "leaning over a little bit" toward the street. According to her, the sign was visible and not completely lying on the ground. She also testified that she regularly patrolled the Bucknell/Calgary area during the summer of 2015. She passed by the Bucknell/Calgary intersection no more than two days before the accident. She testified that she would have noticed a downed stop sign at the intersection but did not see one.

The City also provided an affidavit executed by Johana Clark, the Assistant Director of the Traffic Maintenance Department, which is part of the City's Department of Public Works and Engineering. Clark averred that, because of the large number of stop signs located within the City, it relies on citizen reports to its 3-1-1 call system and on municipal employees' observations to identify signs in need of repair or replacement. Clark averred that the Department's records contained two

3

entries concerning the stop sign at the northbound intersection of Bucknell and Calgary. One report identified a problem on March 11, 2015. City records indicated that the City repaired the problem by March 13, 2015. The second was the repair request made by the Houston Police Department following the accident involving Ellis and Williams.

In response, Ellis and Williams contended that the City had notice of the downed sign. They relied on City records of a downed stop sign at a nearby intersection at the time of the accident. After the discovery period ended, Ellis and Williams amended their response to add affidavits from two previously undisclosed fact witnesses: Ellis's fiancé, Herman Toliver, and an area resident and friend, Dominique Franklin. Toliver arrived at the accident scene on the day that it occurred. He attested that he found the stop sign "lying on the ground" and photographed it. He concluded the sign had been on the ground "for some time" because he saw grass around the sign. He attached photos of a cell phone displaying photos of the fallen stop sign.

Franklin also arrived at the scene of the accident after it happened. In her affidavit, Franklin states that, "For almost a month before August 18, 2015, I

personally saw that the stop sign directing northbound cars on Bucknell at the intersection with Calvary was missing. I could not see a stop sign at all."[1]

The City objected to the Toliver and Franklin affidavits on the basis that these witnesses were not disclosed until after the discovery period had ended. The City further objected to the authenticity of the photographs attached to Toliver's affidavit. The trial court overruled the City's objections to the evidence and denied the City's plea.

## DISCUSSION

On appeal, the City contends that the trial court abused its discretion in allowing the Toliver and Franklin affidavits because the discovery period had ended. The City further argues and that the trial court erred in denying its jurisdictional plea based on governmental immunity.

### I. Evidentiary Rulings

We first consider the trial court's rulings admitting the Toliver and Franklin affidavits for consideration in response to the City's plea to the jurisdiction over the City's objection. Determining whether to admit or exclude evidence lies within the trial court's discretion. *Bay Area Healthcare Group v. McShane*, 239 S.W.3d 231,

---

[1] Although Franklin recounted in the affidavit that the accident happened on August 18, Ellis and Williams allege that it happened on August 8. Other evidence in the record bears out their allegation.

5

234 (Tex. 2007) (per curiam); *Interstate Northborough P'ship v. State*, 66 S.W.3d 213, 220 (Tex. 2001) (citing TEX. R. APP. P. 44.1(a)(1)(A)). A trial court abuses its discretion when it rules "without regard for any guiding rules or principles." *Owens–Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998) (quoting *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 754 (Tex. 1995)).

The City contends that the trial court was required to exclude the affidavits because Toliver and Franklin were not disclosed in discovery responses as persons with knowledge of relevant facts before the discovery period ended. Under Texas Rule of Civil Procedure 193.6,

> A party who fails to make, amend, or supplement a discovery response in a timely manner may not introduce in evidence the material or information that was not timely disclosed, or offer the testimony of a witness (other than a named party) who was not timely identified, unless the court finds that:
>
> (1) there was good cause for the failure to timely make, amend, or supplement the discovery response; or
>
> (2) the failure to timely make, amend, or supplement the discovery response will not unfairly surprise or unfairly prejudice the other parties.

Rule 193.6 places the burden to show good cause or lack of unfair surprise or prejudice on the proponent of testimony, and the record must show one of these grounds to support a decision to admit the testimony. TEX. R. CIV. P. 193.6(b).

Rule 193.6 applies in trials and in summary-judgment proceedings. *Fort Brown Villas III Condo. Ass'n v. Gillenwater*, 285 S.W.3d 879, 880 (Tex. 2009).

The Texas Supreme Court has instructed that a jurisdictional inquiry includes the pleadings and any evidence in the record that is relevant to the inquiry, but it has not expounded on whether Rule 193.6 governs the record for that inquiry, given that a jurisdictional challenge can be raised at any point in the proceedings, including appeal. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 231–32 (Tex. 2004); *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000); *see generally City of Keller v. Hall*, 433 S.W.3d 708, 718, 729–30 (Tex. App.—Fort Worth 2014, pet. denied) (considering evidence excluded by trial court in analyzing jurisdictional issue and concluding its exclusion was not harmful).

Assuming that the trial court could have excluded the affidavits as untimely filed in deciding the jurisdictional question, the record supports the trial court's exercise of discretion to allow them. Ellis and Williams filed the affidavits four days before the hearing; the City replied two days later. The City had an opportunity to respond (and did respond) to the affidavits before the hearing on the plea to the jurisdiction. We conclude that the trial court acted within its discretion in considering the affidavits because the record supports its implied determination that the City suffered no unfair prejudice. *See Hardy v. 11702 Mem'l Ltd.*, 176 S.W.3d 266, 272 n.2 (Tex. App.—Houston [1st Dist.] 2004, no pet.).

## II. Governmental Immunity

The City next contends that its evidence conclusively established that it did not have notice of the downed stop sign, and thus the trial court erred in denying its plea to the jurisdiction.

### A. Standard of review

Governmental immunity deprives the trial court of subject-matter jurisdiction in cases where instrumentalities of the state have been sued, absent waiver of immunity by the state. *Miranda*, 133 S.W.3d at 224. Whether a court has subject-matter jurisdiction is a question of law, and we review the trial court's ruling on a plea to the jurisdiction de novo. *Id.* at 226. The plaintiff has the burden of alleging facts that affirmatively establish the trial court's subject-matter jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). When reviewing a grant or denial of a plea to the jurisdiction, we consider the plaintiff's pleadings, construed in favor of the plaintiff, and any evidence relevant to jurisdiction. *Cty. of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002). When, as in this case, a plea to the jurisdiction challenges the existence of jurisdictional facts, the trial court must consider the relevant evidence submitted by the parties. *Miranda*, 133 S.W.3d at 227.

The procedure for a plea to the jurisdiction when evidence has been submitted to the trial court mirrors that of a traditional motion for summary judgment. *Id.* at 228 (citing Tex. R. Civ. P. 166a(c)). If the evidence creates a fact issue regarding jurisdiction, the trial court does not rule on the plea, but instead submits the issue to the factfinder in a trial on the merits. *Id.* at 227–28. On the other hand, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea as a matter of law. *Id.* at 228.

The movant bears the initial burden to present evidence establishing that the trial court lacks jurisdiction as a matter of law. *Id.* If the movant satisfies that burden, the burden shifts to the plaintiff to demonstrate that a disputed issue of material fact exists regarding the jurisdictional issue. *Id.* "[E]ven then, the plaintiff's burden of proof with respect to those jurisdictional facts must not 'involve a significant inquiry into the substance of the claims.'" *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d, 629, 637–38 (Tex. 2012) (quoting *State v. Lueck*, 290 S.W.3d 876, 884 (Tex. 2009)).

## B. Traffic signals and road signs under the Tort Claims Act

The Texas Tort Claims Act waives governmental immunity for "personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." Tex. Civ. Prac. & Rem. Code § 101.021(2). The Act

limits this more general waiver of immunity when a claim involves the failure of a

traffic control signal or road sign. There is no waiver of immunity for claims arising

from:

> (2) the absence, condition, or malfunction of a traffic or road sign, signal, or warning device unless the absence, condition, or malfunction is not corrected by the responsible governmental unit within a reasonable time after notice; or
>
> (3) the removal or destruction of a traffic or road sign, signal, or warning device by a third person unless the governmental unit fails to correct the removal or destruction within a reasonable time after actual notice.

TEX. CIV. PRAC. & REM. CODE § 101.060(a).

Ellis and Williams rely on subsection 101.060(a)(2) to contend that the City

was responsible for the condition of the downed stop sign. The City does not

challenge the applicability of subsection (a)(2) in this case.

Subsection (a)(2) requires "notice" of the defect when the plaintiff has alleged

an "absence, condition, or malfunction" of a traffic sign or signal. *Id.* The Supreme

Court of Texas has found a waiver of immunity under section 101.060(a)(2) "only

in those situations in which the sign or signal was either (1) unable to convey the

intended traffic control information, or (2) conveyed traffic control information

10

other than what was intended." *Dep't of Transp. v. Garza*, 70 S.W.3d 802, 807 (Tex. 2002).[2]

[2]   The Court has applied section 101.060(a)(2) in circumstances where tree or foliage growth have obstructed a traffic sign. *Lorig v. City of Mission*, 629 S.W.2d 699, 700 (Tex. 1982). Intermediate courts have followed suit. *McKnight v. Calvert*, 539 S.W.3d 447, 455–56 (Tex. App.—Houston [1st Dist.] 2017, pet. filed) (finding fact issue under section 101.060(a)(2) in claim against city involving collision that occurred after driver did not see stop sign at intersection; tree limbs obstructing sign had not been trimmed for some time and police officer testified he had patrolled area for 10 years); *Tirado v. City of El Paso*, 361 S.W.3d 191, 193, 197–98 (Tex. App.—El Paso 2012, no pet.) (finding fact issue under section 101.060(a)(2) as to whether palm fronds obstructed stop sign on date June 2008 accident occurred; plaintiff presented evidence of three prior accidents caused by same condition, one occurring in September 2006 and two in September 2007, as well as city employees' affidavits in which they averred that they were trained to recognize visual obstructions that would interfere with traffic and remove them immediately); *Robnett v. City of Big Spring*, 26 S.W.3d 535, 537–38 (Tex. App.—Eastland 2000, no pet.) (distinguishing cases that did not involve obstructed stop signs and finding plaintiff raised fact issue under section 101.060(a)(2) where evidence showed police officer and two courthouse employees admittedly knew overgrown elm tree obstructed stop sign and judge stated that everyone in town knew about intersection); *Kenneally v. Thurn*, 653 S.W.2d 69, 72 (Tex. App.—San Antonio 1983, writ ref'd n.r.e.) (finding fact issue as to whether city had notice that sign was obscured where evidence showed bushes were scraggly, resident testified that bushes had been there as long as she could remember, and officers passed through intersection on routine patrol several times a month). Courts have also applied section 101.060(a)(2) in situations involving obsolescence or deterioration of the traffic signals. *See Alvarado v. City of Lubbock*, 685 S.W.2d 646, 649 (Tex. 1985) (city did not conclusively establish it lacked notice of discrepancy between posted speed limit of 55 mph and actual speed limit of 50 mph where, following passage of city ordinance lowering limit, several traffic citations and police accident reports noted erroneous sign); *see also Sparkman v. Maxwell*, 519 S.W.2d 852, 855–57 (Tex. 1975) (city's modification of existing signage caused confusion among motorists that led to a collision); *Fort Bend Cty. Toll Rd, Auth. v. Olivares*, 316 S.W.3d 114, 125 (Tex. App.—Houston [14th Dist.]

The Court has not expressly defined 101.060(a)(2)'s "notice" standard and how it differs from the "actual notice" required by 101.060(a)(3). Generally, however, facts and reasonable inferences from them can support a finding that the governmental entity knew about the obstructed or defective road sign. *See McKnight v. Calvert*, 539 S.W.3d 447, 455–56 (Tex. App.—Houston [1st Dist.] 2017, pet. filed) (finding fact issue as to whether city had notice that tree limbs obstructed sign when driver's failure to see stop sign at intersection caused accident; tree had not been trimmed for some time and police officer testified he had patrolled area for 10 years); *Tirado v. City of El Paso*, 361 S.W.3d 191, 200 (Tex. App.—El Paso 2012, no pet.) (finding fact issue as to whether City had notice that palm fronds obstructed stop sign when June 2008 accident occurred; plaintiff presented evidence that city sent work crews to trim trees after each of three prior accidents, one occurring in September 2006 and two in September 2007, as well as affidavits by city employees averring that they were trained to recognize visual obstructions that would interfere with traffic and remove them immediately); *Robnett v. City of Big Spring*, 26 S.W.3d

2010, no pet.) (concluding that wear and tear on pavement markers can render them unable to sufficiently perform their traffic function for purposes of subsection 101.060(a)(2)); *City of Midland v. Sullivan*, 33 S.W.3d 1, 11–12 (Tex. App.—El Paso 2000, pet. denied) (pleadings adequately alleged claim under section 101.060(a)(2) based on condition of school crosswalk markings that had faded and were no longer visible to drivers).

535, 537–38 (Tex. App.—Eastland 2000, no pet.) (distinguishing cases that did not involve obstructed signs and finding city was on notice of sign's condition where police officer and two courthouse employees admittedly knew overgrown elm tree obstructed stop sign, and judge stated that everyone in town knew about intersection); *Kenneally v. Thurn*, 653 S.W.2d 69, 72 (Tex. App.—San Antonio 1983, writ ref'd n.r.e.) (finding fact issue as to whether city had notice sign was obscured where photos in evidence showed bushes were scraggly, resident testified that bushes had been there as long as she could remember, and officers passed through intersection during patrol several times a month).

In this case, a City police officer testified that she patrolled the area regularly, including shortly before the accident. Officer Velezdeya testified that the sign was not down, but only leaning, after the accident, and that she would have seen that the stop sign was missing had the sign been down when she patrolled the intersection two days earlier.

Franklin offered a controverting affidavit: she averred that the sign was down before the accident, during the time the police officer patrolled the intersection. Franklin recounted that she traveled two or three times per week to a church member's home near the Bucknell/Calgary intersection in the month before the accident. Franklin noticed that the stop sign directing northbound cars at the

13

Bucknell/Calgary intersection was "missing" for approximately three weeks before the accident.

Franklin's affidavit creates a material fact issue concerning whether the City had notice of the sign's condition: her testimony contradicts Officer Velezdaya's testimony that she patrolled the area during the same period and the stop sign was not down.

In its jurisdictional plea, the City does not claim that it lacked a reasonable opportunity to cure the condition, and it presented evidence that a prior repair to the sign was completed within two days of its report. Because a factual dispute exists as to whether the sign was up or down when Officer Velezdaya patrolled the intersection two days before the accident happened, the City has not conclusively established that it lacked notice of the sign's condition.

Toliver describes his post-accident investigation of the intersection, including his observation of the length of the grass and other vegetation growing around the sign. From these observations and the photographs accompanying Toliver's affidavit, Ellis and Williams infer that the sign was in a defective condition for an unreasonable length of time before the collision. As the trial court expressed, this evidence does not reveal the length of time that the sign was down or whether the City knew about it. "When the circumstances are equally consistent with either of two facts, neither fact may be inferred." *City of Keller v. Wilson*, 168 S.W.3d 802,

14

813–14 (Tex. 2005) (quoting *Lozano v. Lozano*, 52 S.W.3d 141, 167 (Tex. 2001));
*see Suarez v. City of Tex. City*, 465 S.W.3d 623, 634 (Tex. 2015) (quoting *Keller*).

Because there is evidence that the police officer patrolled the area before the accident and that the stop sign was intact, and controverting evidence from which reasonable jurors could infer that the sign was down when the officer patrolled the intersection, we hold that Ellis and Williams have raised a fact issue as to whether the City had notice of the sign's condition before the accident. Accordingly, the trial court did not err in denying the City's jurisdictional plea.

## CONCLUSION

We affirm the order of the trial court.

Jane Bland
Justice

Panel consists of Chief Justice Radack and Justices Higley and Bland.