# Supreme Court of Texas

No. 23-0032

Weekley Homes, LLC,

*Petitioner*,

v.

John Paniagua; and Hermelinda Maravilla Corona,
Jose Camerino Maravilla, Sr., and Margarita Maravilla,
Individually and as Personal Representatives of the Estate of
Jose Camerino Maravilla, Deceased, et al.,

*Respondents*

On Petition for Review from the
Court of Appeals for the Fifth District of Texas

**PER CURIAM**

In this case, contractors injured by a townhome's energized driveway sued the townhome's owner and developer under theories of negligence and premises liability. We are tasked with determining whether the summary-judgment evidence conclusively establishes that Chapter 95 of the Texas Civil Practice and Remedies Code applies to their claims. We hold that it does, so we reverse the court of appeals' judgment in part and remand to that court for further proceedings.

**I**

Weekley Homes, LLC hired Leobardo Maravilla, an independent contractor, to work on a new townhome construction project. Leobardo's work crew included his brother, Jose Camerino Maravilla, and John Paniagua. The work crew was hired to perform framing, siding, and cornice work on the townhomes. To apply the framing and siding, they used scaffolding, at least some of which was metal, that could be moved to access the townhomes' various fasciae. Each of those townhomes had an adjacent driveway and a temporary electricity pole (also known as a T-pole) that powered the contractors' electrical equipment.

On the day of the incident underlying this suit, intermittent thunderstorms caused the surfaces of those concrete driveways to become wet. Lightning was also present in the area. The crew continued to work through the inclement weather—something Weekley's agent allegedly insisted on. While the crew was moving scaffolding across the wet driveway towards a townhome, the scaffold came within six to ten feet of the T-pole's power line. At that moment, Jose was electrocuted, and John was reportedly injured by an electric shock.

John, together with several of Jose's relatives, sued Weekley (and others) for negligence, gross negligence, and premises liability. They asserted that the cause of Jose's death and John's injuries was electricity from the T-pole or lightning that was conducted by accumulated water on the townhome's driveway. The plaintiffs alleged:

> [Jose] was storing scaffolds and during the process stepped on concrete flooring or driveway that electrocuted him to death. [John] was assisting [Jose] and was electrocuted in

the process. The cement floor or driveway where Plaintiffs were working was near two electrical poles and the cement floor or driveway surrounding same were wet from rainfall which occurred immediately prior to or during the electrocution. There were not any warnings posted about the work-site/premise including that the temporary power poles and lines could cause the surface area to become energized.

After discovery, Weekley filed a combined traditional and no-evidence summary-judgment motion, arguing that Chapter 95 of the Texas Civil Practice and Remedies Code applied and precluded liability. The trial court granted Weekley's motion for summary judgment, and those claims were severed. The plaintiffs appealed.

The court of appeals reversed the trial court's judgment in part. *Paniagua v. Weekley Homes, Inc.*, ___ S.W.3d ___, 2021 WL 118663, at *14 (Tex. App.—Dallas Jan. 13, 2021), *rev'd in part*, 646 S.W.3d 821 (Tex. 2022). The court of appeals affirmed the summary judgment as to the plaintiffs' gross-negligence claim, *id.* at *13-14, but it concluded that Weekley did not meet its burden to conclusively establish that Chapter 95 applied, *id.* at *7-8. In doing so, the court held that Weekley could not rely on the allegations in the plaintiffs' petition to establish Chapter 95's applicability. *Id.* at *8. Weekley petitioned this Court for review.

We granted Weekley's petition and, in a per curiam opinion, reversed the court of appeals' judgment in part. *Weekley Homes, LLC v. Paniagua*, 646 S.W.3d 821, 828 (Tex. 2022). We noted that "summary-judgment movants may rely on allegations in an opposing party's pleadings that constitute judicial admissions." *Id.* at 824. We therefore remanded to the court of appeals to consider whether the

3

plaintiffs' pleadings constituted judicial admissions and, "as appropriate," our other recent opinions "providing guidance on the substantive legal issues presented, including *Los Compadres Pescadores, L.L.C. v. Valdez*, 622 S.W.3d 771 (Tex. 2021)." *Id.*

On remand, the court of appeals again reversed the trial court's summary judgment on the plaintiffs' negligence and premises-liability claims. ___ S.W.3d ___, 2022 WL 17261162, at *10 (Tex. App.—Dallas Nov. 29, 2022). It held that the plaintiffs' allegations were not judicial admissions conclusively establishing Chapter 95's applicability because Jose and John were hired to work on the townhome, not the driveway, and the petition did not otherwise address or describe the driveway's location. *Id.* at *7-9. The court of appeals also held that the summary-judgment evidence did not conclusively establish that the driveway "'affect[ed] the state of being' of the townhome structures." *Id.* at *9 (alteration in original) (quoting *Los Compadres*, 622 S.W.3d at 785). Weekley again petitioned for review.

**II**

"We review summary judgments de novo, taking as true all evidence favorable to the nonmovant, and indulging every reasonable inference and resolving any doubts in the nonmovant's favor." *Energen Res. Corp. v. Wallace*, 642 S.W.3d 502, 509 (Tex. 2022) (quoting *Barbara Techs. Corp. v. State Farm Lloyds*, 589 S.W.3d 806, 811 (Tex. 2019)). As the summary-judgment movant, Weekley bore the initial burden to conclusively establish that Chapter 95 applied. *See Rhône-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 222-23 (Tex. 1999) ("The nonmovant has no burden to respond . . . unless the movant conclusively establishes its

4

cause of action or defense."). "Evidence is conclusive only if reasonable people could not differ in their conclusions . . . ." *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005). For summary-judgment purposes, defendants "can rely on plaintiffs' allegations to demonstrate the applicability of Chapter 95." *Energen*, 642 S.W.3d at 512 n.9 (citing *Regency Field Servs., LLC v. Swift Energy Operating, LLC*, 622 S.W.3d 807, 818-19 (Tex. 2021)).

Chapter 95 of the Civil Practice and Remedies Code applies to a claim:

> (1) against a property owner, contractor, or subcontractor for personal injury, death, or property damage to an owner, a contractor, or a subcontractor or an employee of a contractor or subcontractor; and

> (2) that arises from the condition or use of an improvement to real property where the contractor or subcontractor constructs, repairs, renovates, or modifies the improvement.

TEX. CIV. PRAC. & REM. CODE § 95.002. In cases where it applies, Chapter 95 is the plaintiff's "sole means of recovery." *Abutahoun v. Dow Chem. Co.*, 463 S.W.3d 42, 51 (Tex. 2015).

"Chapter 95 only applies when the injury results from a condition or use of the *same improvement* on which the contractor (or its employee) is working when the injury occurs." *Ineos USA, LLC v. Elmgren*, 505 S.W.3d 555, 567 (Tex. 2016) (emphasis added). As used in Chapter 95, we have said "improvement" means "all additions to the freehold except for trade fixtures [that] can be removed without injury to the property." *Id.* at 568 (alteration in original) (quoting *Abutahoun*, 463 S.W.3d at 49). But, when evaluating Chapter 95, the relevant improvement should be

5

construed "narrowly . . . because the statute requires that the injury arise from the condition or use of the improvement that the contractor or subcontractor 'constructs, repairs, renovates, or modifies.'" *Los Compadres*, 622 S.W.3d at 784 (quoting TEX. CIV. PRAC. & REM. CODE § 95.002(2)).

However, the contractor does not need to be injured by the improvement itself if the claim arises from a "condition" of the improvement. TEX. CIV. PRAC. & REM. CODE § 95.002(2). For claims that—as here—sound in premises liability, "Chapter 95 applies where negligence affecting the condition of an improvement on which plaintiffs were working was a cause of their damages." *Energen*, 642 S.W.3d at 512. A "condition" is "an intentional or an inadvertent state of being." *Abutahoun*, 463 S.W.3d at 49 (quoting *Sparkman v. Maxwell*, 519 S.W.2d 852, 858 (Tex. 1975)). In *Los Compadres*, we clarified that "[i]f a dangerous condition, by reason of its proximity to an improvement, creates a probability of harm to one who 'constructs, repairs, renovates, or modifies' the improvement in an ordinary manner, it constitutes a condition of the improvement itself." 622 S.W.3d at 785-86 (quoting TEX. CIV. PRAC. & REM. CODE § 95.002(2)).

### III

Weekley argues that the allegations in the plaintiffs' petition—combined with the other summary-judgment evidence—conclusively establish that the wet driveway was a condition of the townhome on which the crew was hired to work. We agree.

6

In support of its contention that the second prong of Chapter 95 applies, Weekley cited paragraph 13 of the plaintiffs' petition.[1] That paragraph alleges that Jose and John were moving across and stepped on a driveway near two electric poles and that the driveway was wet, became energized, and electrocuted or shocked them. The plaintiffs allege that Weekley negligently failed to warn Jose and John of this "dangerous condition." Under *Regency*, Weekley was entitled to rely on these factual allegations, not pleaded in the alternative, to define the issues and determine whether Chapter 95 applied. 622 S.W.3d at 819-20. These assertions, together, conclusively establish that the gravamen of the plaintiffs' claims is that Weekley negligently required the crew to continue working when the driveway was wet and at risk of being electrified and that the referenced "dangerous condition" was the electrified driveway. *See Energen*, 642 S.W.3d at 514 (holding Chapter 95 applied to an allegation that the owner negligently failed to address a dangerous condition of an improvement on which the plaintiffs were working).

Elsewhere, Weekley's motion cited testimony explaining that Leobardo and his crew were, at the time of the incident, moving the scaffolding across the driveway to position it closer to the townhome. Weekley also cited John's testimony that moving the scaffolding across

---

[1] As our prior opinion observed, the legal argument in Weekley's summary-judgment motion directed to the second prong of Chapter 95 focused on the plaintiffs' petition. *Weekley Homes*, 646 S.W.3d at 825, 827. But Weekley's motion also cited evidence attached as exhibits to the motion. It is this additional evidence—viewed in light of the petition's judicial admissions— that conclusively establishes that Chapter 95 applies.

7

the driveway was necessary to perform the siding and cornice work they were hired to perform. That same testimony confirmed that Jose was "walking the pole back towards the house . . . which would have been closer to the garage" when John thought "[Jose] stepped in a puddle of water" that electrocuted him. Photographic evidence attached to Weekley's motion showed that the T-pole and what the plaintiffs describe in their response as the driveway were but a few feet away from the townhome. Other evidence confirmed that the crew were moving the scaffolding across the driveway at that time specifically "because [they] had to finish the upper part, the front." *See Paniagua*, 2021 WL 118663, at *4.

This evidence, combined with the petition's allegations, conclusively establishes under *Los Compadres* that the electrified driveway was a condition of the townhome. It is undisputed that Jose and John were moving the scaffolding across the driveway to enable them to perform the siding work they were hired to do. And the photographs confirm the petition's allegation that the driveway was "near" both the electric pole and the townhome itself. Under these facts, Jose and John were exposed to the electrified driveway upon moving the scaffolding—scaffolding that they needed to move across the driveway to complete their work on the townhome. Thus, the electrified driveway, "by reason of its proximity to [the townhome], create[d] a probability of harm to one who 'constructs, repairs, renovates, or modifies' the [townhome]" and was a condition of the townhome itself. *Los Compadres*, 622 S.W.3d at 785 (quoting TEX. CIV. PRAC. & REM. CODE § 95.002(2)).

8

Contrary to the court of appeals' suggestion, the petition did not need to state the precise distance between the driveway and the townhome. While such information would have aided the analysis, it is not necessary to establish that the electrified driveway created a probability of harm to the workers in light of the workers' testimony that they were required to move across—and set metal scaffolding on—the driveway to perform their work. Rather than focus on what allegations were absent, the proper inquiry is whether the allegations and evidence in the record established that the electrified driveway, because of its position, created a probability of harm to the work crew. Considering the entirety of the record, the answer is conclusively "yes."[2]

## IV

For the foregoing reasons, and without hearing oral argument, *see* TEX. R. APP. P. 59.1, we grant the petition for review, reverse the court of appeals' judgment in part and remand to the court of appeals for consideration of the plaintiffs' other, unaddressed issues.

**OPINION DELIVERED:** June 21, 2024

---

[2] Weekley also argues that the driveway was the same improvement as the townhome. Because we conclude that the electrified driveway was a condition of the townhome, we do not address this argument.

9