Michael Massengale, Justice
This is an appeal from a personal-injury lawsuit filed after a car wreck. Appellee Matthew Calvert ran a stop sign in a residential neighborhood, injuring appellant Phillip McKnight. Calvert admitted his failure to stop, but he claimed he couldn't see the sign because it was covered by trees.
McKnight and his wife, Tami Johnson, sued Calvert to recover damages caused by the accident. Calvert, in turn, designated the City of Houston and the owners of adjacent property as responsible third parties, arguing that the accident was caused by their negligent failure to maintain the sign by trimming the trees.
After all of the evidence was presented at trial, McKnight and Johnson moved for a directed verdict with respect to both the city and the neighboring homeowners. They argued that no evidence had been introduced to establish that the city or the homeowners owed any duty with respect to the stop sign. The trial court denied the motions. The jury found that Calvert, the city, and the homeowners were each negligent, allocated proportional fault to each, and awarded damages.
McKnight and Johnson raise three issues on appeal. They argue that the trial court erred by denying their directed-verdict motions and that the jury's award of zero dollars for past disfigurement was against the great weight and preponderance of the evidence.
We conclude that the trial court correctly denied the motions for directed verdict. Additionally, the jury's award of zero dollars for past disfigurement was not against *451 the great weight and preponderance of the evidence. Accordingly, we affirm the judgment of the trial court.
Background
Matthew Calvert, a resident of the United Kingdom, visited his brother in Houston. While driving near his brother's home in the Montrose neighborhood, Calvert ran a stop sign and his car collided with a car operated by Phillip McKnight. Calvert suffered no injuries, but McKnight was transported to the emergency room.
The accident occurred near the home of Thaddeus and Jennifer Coffindaffer. Calvert reported to a police officer that he had not seen the stop sign because it was obscured by a tree in the Coffindaffers' yard.
Following the accident, McKnight and his wife, Tami W. Johnson, brought a suit for damages against Calvert. Before trial, Calvert designated the City of Houston and the Coffindaffers as responsible third parties.[1] Calvert alleged that the city was responsible for maintaining the stop sign. He also alleged that the Coffindaffers were responsible for trimming the tree that obscured the stop sign.
At trial, Calvert admitted that he ran the stop sign, but he maintained that he was not at fault because he didn't see it.
The police officer who responded to the accident testified at trial. For ten years he had worked as a policeman in the vicinity of the accident location. During that time, he had not heard of or responded to any accidents at that intersection, and he had not pulled anybody over for running that stop sign. McKnight and Johnson offered into evidence an affidavit from a custodian of records for the Houston Police Department that indicated that it did not have any "vehicle crash incident reports" involving that intersection for the five years prior to the accident. The officer further testified that the city owned the stop sign, and that "in fairness" either the city or the Coffindaffers should be responsible for making sure the stop sign was not obscured by a tree. Finally, the officer testified that the tree at issue was located in the Coffindaffers' yard.
The trial court admitted into evidence pictures of the stop sign taken immediately after the accident. Calvert's counsel asked the responding police officer to look at Defendant's Exhibit 10:
*452 Counsel asked: "Now when you look over there to the right-hand side ... if you look real hard, you can see a stop sign back behind the tree, correct?" The officer responded, "Correct." Calvert's counsel then asked, "That's definitely tree branches that are in front of that stop sign, true?" Again the officer replied, "Correct." After questioning the officer about the need for trees to be trimmed over time, Calvert's counsel asked, "at some point it got big enough where it does create, at least potential restriction of visibility of this stop sign, fair?" According to the trial transcript, the officer responded, "Fairness." As indicated by the officer's testimony, the photograph depicted tree branches obscuring the stop sign. In addition, the trial evidence showed that the tree branches extended from a tree located in the Coffindaffers' yard.
A neurosurgeon testified that he performed two surgeries on McKnight in order to alleviate neck and back pain, and that the surgeries were "proximately caused" by the car accident. The neurosurgeon testified that McKnight had "degenerative condition[s]" in his back. As a result of these conditions, the surgeon determined when he first met with McKnight that he would need "some decompression." The first surgery was complicated by McKnight's body weight-he was six feet tall and weighed 325 pounds. By the time of the second surgery, McKnight had gained "like about 60-something pounds" as a result of the "sedentary lifestyle he ... had to have after the first surgery."
McKnight also testified at trial. He testified that he had "a scar" on his neck as a result of the surgery. The record does not indicate that the jury was ever shown the scar. He denied gaining 60 pounds as a result of the first surgery, contending that he had "small percentage fluctuations in weight over time."
After the close of the evidence, McKnight and Johnson moved for a directed verdict with respect to the third-party *453 responsibility of both the city and the Coffindaffers. They argued that there was no evidence the city had notice of the tree covering the stop sign, and therefore it had no duty to correct the situation. They also argued that there was no evidence to support the imposition of a duty on the Coffindaffers to ensure that the tree did not obscure the stop sign. The trial court denied both motions.
The jury found that negligence by each of Calvert, the Coffindaffers, and the City of Houston "caused the occurrence in question." Regarding the "percentage of the negligence that caused or contributed to the occurrence," the jury found Calvert 33% responsible, the Coffindaffers 33% responsible, and the city 34% responsible. The jury awarded McKnight $60,000 for past and future physical pain and mental anguish, $0 for loss of future earning capacity, and $0 for past and future disfigurement. The jury awarded Johnson $15,000 for past and future loss of household services, $25,000 for loss of consortium in the past, and $0 for loss of consortium in the future.
The trial court entered judgment based on the jury's findings. McKnight and Johnson appealed.
Analysis
McKnight and Johnson raise three issues challenging the trial court's judgment. In their first two issues, they contend that the trial court erred by denying their motions for directed verdict based on the argument that no relevant duties were owed by the City of Houston or the adjacent homeowners. In their third issue, they argue that the jury's refusal to award damages for disfigurement was against the great weight and preponderance of the evidence.
I. Designation of responsible third-parties
In their first and second issues, McKnight and Johnson contend that the trial court erred by denying their motions for directed verdict with respect to the designated responsible third-parties, the City of Houston and the Coffindaffers. In both issues, they argue that no evidence established that either the city or the Coffindaffers owed a duty to warn of, or to correct, the obscured condition of the stop sign.
A complaint about the denial of a motion for directed verdict is reviewed by the same standard as a challenge to the legal sufficiency of the evidence.[2] We view the evidence and inferences in the light most favorable to the jury's findings.[3] Such a challenge will be sustained only when (1) there is a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence conclusively establishes the opposite of a vital fact.[4]
To prove negligence, "evidence must be produced to establish a duty, a breach of that duty, and damages proximately caused by the breach."[5] The *454 threshold inquiry in a negligence case is duty.[6] The existence of duty is a question of law for a court to decide from the facts surrounding the occurrence in question.[7]
A. City of Houston
McKnight and Johnson contend that the trial court erred by denying their motion for directed verdict with respect to the City of Houston. They argue that the Texas Tort Claims Act establishes the parameters of the city's duty with respect to the maintenance of stop signs and traffic signals, and that the city had to have notice that the tree obscured the stop sign in order to have had a duty to warn of or to correct the condition.[8] McKnight and Johnson thus contend that because no evidence established that the city knew or should have known of the stop sign's obscured condition, the city had no duty to warn or to correct the condition.
In response, Calvert argues that in order to designate the city as a responsible third party and submit a question to the jury regarding its responsibility for the accident, all he had to do was present "enough evidence to support a finding that the City of Houston was responsible for contributing to the occurrence in question and caused a portion of" the damages. As a result, he contends that he did not have to present evidence that the city had notice of the tree obscuring the stop sign.
To be entitled to a jury issue that allowed the trier of fact to determine the percentage of responsibility of each party designated as a responsible third party, Calvert had to present sufficient evidence demonstrating that the city caused or contributed "to cause in any way the harm" to McKnight and Johnson, "whether by negligent act or omission, by any defective or unreasonably dangerous product, by other conduct or activity that violates an applicable legal standard, or by any combination of these."[9] Calvert sought to establish that the city caused or contributed to cause McKnight's and Johnson's damages through a negligent act, namely that it negligently failed to warn of, or to correct, the obscured condition of the stop sign.
The Tort Claims Act waives immunity for personal injuries and deaths proximately caused by a condition or use of personal or real property if a governmental unit would, were it a private person, be liable.[10] This use-of-property waiver is an exception to the general rule of governmental immunity.[11] In an exception to the exception, the waiver of immunity does not apply to claims arising from "the absence, condition, or malfunction of a traffic or road sign, signal or warning device unless the absence, condition, or malfunction is not corrected by the responsible governmental unit within a reasonable time after notice."[12]
Sections 101.022 and 101.060 of the Tort Claims Act, read together, establish the duty owed by the State to a plaintiff *455 who asserts a premises-liability claim involving a traffic signal.[13] The pertinent provisions of the Civil Practice and Remedies Code state:
Sec. 101.022. Duty Owed: Premise and Special Defects
(a) Except as provided in Subsection (c), if a claim arises from a premise defect, the governmental unit owes to the claimant only the duty that a private person owes to a licensee on private property, unless the claimant pays for the use of the premises.
(b) The limitation of duty in this section does not apply to the duty to warn of special defects such as excavations or obstructions on highways, roads, or streets or to the duty to warn of the absence, condition, or malfunction of traffic signs, signals, or warning devices as is required by Section 101.060.
(c) If a claim arises from a premise defect on a toll highway, road, or street, the governmental unit owes to the claimant only the duty that a private person owes to a licensee on private property.
Sec. 101.060. Traffic and Road Control Devices
(a) This chapter does not apply to a claim arising from:
....
(2) the absence, condition, or malfunction of a traffic or road sign, signal, or warning device unless the absence, condition, or malfunction is not corrected by the responsible governmental unit within a reasonable time after notice ...
....
Thus, a governmental unit owes a duty to warn of the defective condition of a traffic or road sign when the responsible governmental unit has not corrected the condition within a reasonable time after notice.[14] A stop sign's obstruction from view by trees or branches is a "condition" of the sign within the meaning of the statute.[15]
Section 101.060(a)(2) requires "notice" of the relevant absence, condition, or malfunction. This "notice" can be "actual" or "constructive."[16] "Constructive notice" is notice the law imputes to a person not having personal information or knowledge.[17] In premises-defect cases, constructive knowledge of a dangerous condition, *456 which is equivalent to constructive "notice,"[18] can be established by "facts or inferences" that the condition could develop over time.[19] In cases applying Section 101.060(a)(2), courts have held that constructive "notice," in the sense that facts and circumstances gave rise to a reason for a governmental unit to know of a given absence, condition, or malfunction of a traffic or road sign, signal, or warning device, is sufficient to satisfy the "notice" requirement.[20] For example, in Kenneally v. Thurn , the plaintiffs were involved in an automobile collision. They sued the City of San Antonio, alleging that it was negligent in permitting a stop sign to be obscured from view by crepe myrtle bushes.[21] The trial court granted a motion for instructed verdict in favor of the city. On appeal, the court held that the trial court erred by granting the instructed verdict and explained:
There is sufficient evidence to raise a question of fact as to whether the condition had existed for such a length of time that City, in the exercise of reasonable diligence, should have discovered it. The photographs introduced in evidence showed that the bushes were scraggly, indicating that they had not been trimmed in some time. One of the residents in the area testified that the bushes had been there as long as she could remember. The evidence also showed that various police officers of the City, while on routine patrol, drove through the intersection, driving in an easterly direction, several times a month.[22]
The evidence in this case included photographs showing tree limbs hanging down and obscuring the stop sign, which supports an inference that the limbs had not been trimmed in some time.[23] A police officer testified that the stop sign belonged to the city. He also testified that he had patrolled the area where the accident occurred for ten years.
As a result, we conclude that sufficient evidence was admitted at trial to permit a rational factfinder to conclude that the city had reason to know, i.e. notice, of the obscured condition of the stop sign.[24] Thus, the evidence supported a finding that the city had a duty to correct or warn of the condition of the stop sign, and the trial court did not err by denying the motion for directed verdict regarding the city's negligence.[25] Therefore, we overrule McKnight and Johnson's first issue.
B. The Coffindaffers
McKnight and Johnson also contend that the trial court erred by denying their motion for directed verdict with respect to the Coffindaffers' negligence. In their motion, they argued that there was no evidence that the Coffindaffers "did anything wrong" or that "there was any negligence *457 on their part." On appeal, McKnight and Johnson contend that there was "no evidence presented that the Coffindaffers occupied the land where the stop sign was erected," and therefore they owed no duty as owners or occupiers of land "abutting a highway." Thus, they argue that the trial court erred by denying their motion for directed verdict and submitting a jury question about the Coffindaffers' negligence.
"The owner or occupant of premises abutting a highway has a duty to exercise reasonable care not to jeopardize or endanger the safety of persons using the highway as a means of passage or travel."[26] Focusing on the definition of the word "abut" and relying on Clements v. City of Corpus Christi ,[27] McKnight and Johnson contend that the Coffindaffers owed no duty to users of the street in this case because they did not own "the land abutting the street ... where the stop sign was erected." In the context of interpreting a statute that authorized a city to enact an ordinance to assess costs of certain road improvements against "property abutting upon the highway,"[28] the court in Clements stated that "abut" means "to touch along a border or with a projecting part, (land abuts on the road); to terminate at a point of contact; to border on; touch."[29] But unlike the particular concerns of the statute at issue in Clements , the justification for the imposition of a duty on premises owners to avoid endangering the users of a public highway is not strictly limited to owners of land that actually "abuts" or shares a boundary with the road. Rather, as demonstrated by the Supreme Court's reliance in Alamo National Bank v. Kraus on Dean Prosser's treatise and the Restatement (Second) of Torts , the relevant duty requires a possessor of land to avoid allowing a condition of his land to interfere unreasonably with the public's right to use a highway.[30] "The distance would appear not to be so important in itself, but merely to bear upon the existence of a recognizable danger to the normal users of the highway."[31]
*458 Because the Coffindaffers did not own the stop-sign location, McKnight and Johnson also emphasize that their duty did not extend beyond the limits of the premises owners' control.[32] But the source of the Coffindaffers' duty in these circumstances was not a responsibility to maintain the stop sign, but instead was a responsibility to prevent the conditions they did control on their land-the growth of a tree-from endangering motorists on the road nearby.
Photographs were introduced which indicated that tree branches obscured the stop sign. The testimony of the police officer who responded to the accident confirmed that tree branches obscured the stop sign. Additionally, the police officer testified that the tree at issue was in the yard of a homeowner named Coffindaffer. McKnight and Johnson did not object to the officer's testimony about the ownership of the property where the tree was located. Further, the photographs indicated that the tree branches grew from the Coffindaffers' yard and extended in front of the stop sign.
Although there was no testimony indicating that the Coffindaffers owned the stop sign or the land immediately touching the street, the evidence did suggest that they owned the property where the tree was located. The evidence also established that the tree reached out from that property and obscured the stop sign. An owner of property where a tree is located is bound by the duty of owners or occupiers of premises abutting a highway if the tree is in such a position that it could endanger the safety of persons using the highway.[33]
The evidence established that the Coffindaffers owned property where a tree was located, and the tree could endanger the safety of persons using a public road by obscuring a stop sign. We conclude that sufficient evidence was introduced to support the conclusion that the Coffindaffers owed the duty, as owners or occupiers of premises in close proximity to a public road, to exercise reasonable care to avoid endangering the safety of persons using the road for travel.[34] Thus, the trial court correctly denied McKnight and Johnson's motion for directed verdict with respect to the Coffindaffers.[35] We overrule McKnight and Johnson's second issue.
II. Disfigurement damages
In their third issue, McKnight and Johnson argue that the evidence was factually insufficient to support an award of zero damages for past disfigurement.
When a party attacks the factual sufficiency of an adverse finding on an issue on which it has the burden of proof, it must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence.[36] A reviewing court must consider and weigh all of the evidence and can set aside a verdict only if the evidence is so weak or the finding is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust.[37]
*459 Jury findings must be accorded great deference.[38] The factfinder is the sole judge of witnesses' credibility and the weight given their testimony, and the factfinder may choose to believe one witness over another.[39] Because it is the factfinder's province to resolve conflicting evidence, we assume that the factfinder resolved all evidentiary conflicts in accordance with its decision if reasonable minds could have done so.[40] An appellate court may not impose its own opinion in opposition to the factfinder's implicit credibility determinations.[41]
"Disfigurement has been defined as that which impairs or injures the beauty, symmetry, or appearance of a person or thing; that which renders unsightly, misshapen or imperfect, or deforms in some manner."[42] "[W]hether to award damages and how much is uniquely within the factfinder's discretion."[43] The amount of damages awarded for disfigurement is "necessarily speculative," and each case must be judged on its own facts.[44]
"When there is conflicting evidence about the severity of the injuries or about whether the injuries were caused by the collision, the jury has the discretion to resolve the conflicts, determine which version of the evidence to accept, and refuse to award damages."[45] "The jury may determine that only part of the injuries were caused by the defendant's conduct at issue and may award damages accordingly."[46] Courts have upheld jury awards of zero damages even when subjective and objective evidence of injuries existed, so long as the verdict was not so contrary to the great weight of the evidence as to be manifestly unjust.[47]
McKnight and Johnson argue that they presented "undisputed" evidence that McKnight suffered "disfiguring scarring" and "substantial weight gain" due to the surgery proximately caused by the collision. As a result, they contend that the jury was not at liberty to award zero damages for past disfigurement.
The evidence included the testimony of a neurosurgeon who testified that he performed two surgeries on McKnight in order to alleviate neck and back pain. He also testified that the surgeries were "proximately caused" by the accident. McKnight then testified that he has "a scar" on his neck as a result of the surgery. The record does not indicate that the jury was ever shown the scar. In addition to the testimony regarding the scarring, the neurosurgeon discussed how McKnight gained 60 pounds as a result of his sedentary lifestyle following the first surgery.
On cross-examination, the neurosurgeon testified that McKnight had "degenerative condition[s]" in his back that began prior to the accident. As a result of these conditions, the surgeon determined when he *460 first met with McKnight that he would need "some decompression." Further, with respect to his weight gain, McKnight testified that he did not gain 60 pounds as a result of the first surgery.
McKnight undisputedly had surgery that resulted in a scar. But the testimony of the neurosurgeon on cross-examination regarding the fact that McKnight had "degenerative condition[s]" in his back prior to the accident and his determination that "some decompression" was needed undermined McKnight's contention that the accident was the proximate cause of his need to undergo surgery.[48] It is within the jury's province as the factfinder to consider the credibility of the witnesses and weigh the evidence.[49] The jury also has discretion to determine that only part of the injuries at issue were caused by the defendant's conduct, and it may award damages accordingly.[50] In this situation, in which there was conflicting evidence about the severity of McKnight's scarring and weight gain and the cause of that scarring and weight gain, the jury had the discretion to resolve the conflicts in the evidence, to choose which version of the evidence to accept, and to refuse to award damages. The jury resolved the conflicts in the evidence by awarding no damages for past disfigurement. We conclude that verdict was not against the great weight and preponderance of the evidence.[51] We overrule McKnight's third issue.
Conclusion
We affirm the judgment of the trial court.

See Tex. Civ. Prac. & Rem. Code § 33.004.

City of Keller v. Wilson , 168 S.W.3d 802, 823 (Tex. 2005).

Id. at 822-23.

King Ranch, Inc. v. Chapman , 118 S.W.3d 742, 751 (Tex. 2003) ; see also City of Keller , 168 S.W.3d at 810.

Werner v. Colwell , 909 S.W.2d 866, 869 (Tex. 1995) ; El Chico Corp. v. Poole , 732 S.W.2d 306, 311 (Tex. 1987).

Centeq Realty, Inc. v. Siegler , 899 S.W.2d 195, 197 (Tex. 1995) ; Barton v. Whataburger, Inc. , 276 S.W.3d 456, 462 (Tex. App.-Houston [1st Dist.] 2008, pet. denied).

Van Horn v. Chambers , 970 S.W.2d 542, 544 (Tex. 1998) ; Greater Hous. Transp. Co. v. Phillips , 801 S.W.2d 523, 525 (Tex. 1990) ; Barton , 276 S.W.3d at 462.

See Tex. Civ. Prac. & Rem. Code § 101.060(a)(2).

Id. § 33.003.

Id. § 101.021(2); City of Grapevine v. Sipes , 195 S.W.3d 689, 691-92 (Tex. 2006).

Sipes , 195 S.W.3d at 692.

Id. (quoting Tex. Civ. Prac. & Rem. Code § 101.060(a)(2) ).

Lorig v. City of Mission , 629 S.W.2d 699, 700-01 (Tex. 1982) (per curiam); Chapman v. City of Houston , 839 S.W.2d 95, 99 (Tex. App.-Houston [14th Dist.] 1992, writ denied) ; Zapata v. Kariyaparambil , No. 14-96-00901-CV, 1997 WL 566222, at *1-2 (Tex. App.-Houston [14th Dist.] Sept. 11, 1997, no pet.) (mem. op., not designated for publication); see also Sipes , 195 S.W.3d at 691-95 ; City of Mission v. Cantu , 89 S.W.3d 795, 802 n.8 (Tex. App.-Corpus Christi 2002, no pet.) ; Tex. Dep't of Transp. v. Ramming , 861 S.W.2d 460, 464-65 (Tex. App.-Houston [14th Dist.] 1993, writ denied).

Tex. Civ. Prac. & Rem. Code §§ 101.022(b), 101.060(a)(2) ; City of Austin v. Lamas , 160 S.W.3d 97, 100-102 (Tex. App.-Austin 2004, no pet.) ; Tirado v. City of El Paso , 361 S.W.3d 191, 196-98 (Tex. App.-El Paso 2012, no pet.).

Lorig , 629 S.W.2d at 701.

See, e.g. , Tex. Dep't of Transp. v. Olivares , 316 S.W.3d 89, 105 (Tex. App.-Houston [14th Dist.] 2010, no pet.) ; Lamas , 160 S.W.3d at 101-02 (distinguishing § 101.060(a)(3), which specifies that the governmental entity receive "actual notice" to be liable for the "removal or destruction of a traffic or road sign, signal, or warning device by a third person," from § 101.060(a)(2), which requires "notice" but not "actual notice").

Nguyen v. Chapa , 305 S.W.3d 316, 324 (Tex. App.-Houston [14th Dist.] 2009, pet. denied).

Bryan A. Garner , Garner's Dictionary of Legal Usage 512 (3d ed. 2011) (observing that the "phrase constructive knowledge is equivalent to-and inferior to-notice ").

See Sampson v. Univ. of Tex. at Austin , 500 S.W.3d 380, 397 (Tex. 2016).

See, e.g. , Robnett v. City of Big Spring , 26 S.W.3d 535, 539 (Tex. App.-Eastland 2000, no pet.).

653 S.W.2d 69, 71 (Tex. App.-San Antonio 1983, writ ref'd n.r.e.).

Id. at 72.

See ids="9926800" index="32" url="https://cite.case.law/sw2d/653/69/#p71">id.

See Lamas , 160 S.W.3d at 101-03 ; Kenneally , 653 S.W.2d at 71-72.

See Tex. Civ. Prac. & Rem. Code § 101.060(a)(2) ; Kenneally , 653 S.W.2d at 71-72.

Alamo Nat'l Bank v. Kraus , 616 S.W.2d 908, 910 (Tex. 1981) ; see also Avery v. Alexander , No. 09-08-00078-CV, 2008 WL 6740797, at *3 (Tex. App.-Beaumont Aug. 27, 2009, pet. denied) (mem. op.); Hirabayashi v. N. Main Bar-B-Q, Inc. , 977 S.W.2d 704, 707-08 (Tex. App.-Fort Worth 1998, pet. denied) ; Fetty v. Miller , 905 S.W.2d 296, 301-02 (Tex. App.-San Antonio 1995, writ denied).

471 S.W.2d 83 (Tex. Civ. App.-Corpus Christi 1971, writ ref'd n.r.e.).

Id. at 85 (quoting Act of May 22, 1937, 45th Leg., R.S., ch. 439, § 1, 1937 Tex. Gen. Laws 904, repealed by Act of April 21, 1995, 74th Leg., R.S., ch. 165, § 24(a), 1995 Tex. Gen. Laws 1025, 1870).

Id. at 86.

See Alamo Nat'l Bank , 616 S.W.2d at 910-11 (citing, inter alia, W. Prosser , Law of Torts § 57 (4th ed. 1971), and Restatement (Second) of Torts S §§ 368, 414A (1965) ).

W. Page Keeton et al. , Prosser & Keeton on Torts § 57, at 389 (5th ed. 1984). "The one important limitation upon the responsibility of the possessor of land to those outside of his premises has been the traditional rule, of both the English and the American courts, that he is under no affirmative duty to remedy conditions of purely natural origin upon his land, although they may be highly dangerous or inconvenient to his neighbors."Id. at 390. This limitation has not been uniformly applied, such as in the circumstance of urban areas, like the Montrose neighborhood, in which a duty has been imposed on landowners to exercise reasonable care to make sure that their trees are safe. See id. at 391 ; Restatement (Second) of Torts S § 363 (1965) ; see also Zapata , 1997 WL 566222, at *2 ("the general rule against liability for natural conditions does not apply to land in an urban area"). We need not resolve definitively the question of whether the natural-conditions exception applies to this particular tree on a residential lot in Montrose, as the appellants have not raised the issue.

See Dixon v. Hous. Raceway Park, Inc. , 874 S.W.2d 760, 763 (Tex. App.-Houston [1st Dist.] 1994, no writ).

See Zapata , 1997 WL 566222, at *2-3.

See Alamo Nat'l Bank , 616 S.W.2d at 910 ; Avery , 2008 WL 6740797, at *3 ; Hamric v. Kan. City S. Ry. Co. , 718 S.W.2d 916, 917-19 (Tex. App.-Beaumont 1986, writ ref'd n.r.e.) ; Zapata , 1997 WL 566222, at *3.

See City of Keller , 168 S.W.3d at 823.

Dow Chem. Co. v. Francis , 46 S.W.3d 237, 242 (Tex. 2001) ; Urista v. Bed, Bath, & Beyond, Inc. , 245 S.W.3d 591, 601 (Tex. App.-Houston [1st Dist.] 2007, no pet.).

Dow Chem. , 46 S.W.3d at 242 ; Urista , 245 S.W.3d at 601.

See Herbert v. Herbert , 754 S.W.2d 141, 143-44 (Tex. 1988).

See Golden Eagle Archery, Inc. v. Jackson , 116 S.W.3d 757, 761 (Tex. 2003).

City of Keller , 168 S.W.3d at 819.

See ids="8943104" index="61" url="https://cite.case.law/sw3d/168/802/#p823">id. at 819-20.

Goldman v. Torres , 161 Tex. 437, 341 S.W.2d 154, 160 (1960) ; see also Doctor v. Pardue , 186 S.W.3d 4, 18 (Tex. App.-Houston [1st Dist.] 2005, pet. denied).

Golden Eagle Archery , 116 S.W.3d at 772.

Figueroa v. Davis , 318 S.W.3d 53, 62 (Tex. App.-Houston [1st Dist.] 2010, no pet.).

Huston v. United Parcel Serv., Inc. , 434 S.W.3d 630, 641 (Tex. App.-Houston [1st Dist.] 2014, pet. denied).

Id.

Id.

See Huston , 434 S.W.3d at 641-42.

Id. ; City of Keller , 168 S.W.3d at 819-21.

Huston , 434 S.W.3d at 641.

See id. at 641-42.