

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-19-00437-CV

BILLY GONZALES, AS NEXT FRIEND OF AIDAN ZACHARY GONZALES, A MINOR, APPELLANT

V.

3 ATOMS, LLC AND FUN SPOT MANUFACTURING, LLC, APPELLEES

On Appeal from the 72nd District Court
Lubbock County, Texas
Trial Court No. 2017-524,895, Honorable Ruben G. Reyes, Presiding

April 23, 2020

## MEMORANDUM OPINION

Before QUINN, C.J., and PIRTLE and DOSS, JJ.

Billy Gonzales, as next friend of Aidan Zachary Gonzales (Zach), a minor, appeals from a final judgment. The circumstances underlying the appeal concern 1) a suit to recover damages for personal injury against 3 Atoms, LLC and Fun Spot Manufacturing, LLC, 2) a verdict favoring Zach, in part, 3) the entry of judgment on the verdict, 4) Zach moving for and receiving a new trial, 5) this Court issuing a conditional writ of mandamus directing "the trial court to vacate its May 31, 2019 order granting a new trial," *In re 3 Atoms, LLC*, No. 07-19-00243-CV, 2019 Tex. App. LEXIS 7186, at *8–9 (Tex. App.—

Amarillo Aug. 14, 2019, orig. proceeding) (mem. op.), 6) the trial court executing an order by which it "set aside" the prior order granting new trial, 7) the trial court signing an amended final judgment, 8) Zach again moving for new trial, and 9) the trial court overruling the motion by operation of law. Through this appeal, Zach asks us to reconsider our conditional writ of mandamus and questions the validity of the trial court's failure to again order a new trial. We affirm.

*Writ of Mandamus*

The first issue we address encompasses our prior order granting a conditional writ of mandamus. Zach begins by asserting we "previously held that [the] order granting a new trial in this case, dated May 31, 2019, was facially invalid." He follows this with: "[h]owever, the order's stated legal reasons—that the zero-dollar award for future disfigurement was inadequate and against the great weight and preponderance of the evidence—are legally sufficient to justify a new trial, as demonstrated by a mountain of case law and the Texas Rules of Civil Procedure themselves."

In short, he asks us through this appeal to reconsider our order granting the conditional writ of mandamus. In so asking us, he says nothing about the ability to use a later appeal from a final judgment as a means of attacking a prior ruling in an original mandamus proceeding. Nevertheless, that may be done. *See, e.g.*, *Perry Homes v. Cull,* 258 S.W.3d 580, 585–86 (Tex. 2008) (wherein the Culls contended that the pre-arbitration mandamus proceedings established the law of the case and barred the Defendants from raising the same arguments on appeal and holding that since mandamus is a discretionary writ, denying it without comment on the merits cannot deprive another appellate court from considering the matter in a subsequent appeal). And, because we

2

did not address the merits in *3 Atoms*, then the same issue underlying the decision to grant mandamus may be considered in this later appeal.[1] *Perry Homes,* 258 S.W.3d at 586. Yet, other obstacles undermine the meritoriousness of his issue.

Initially, the trial court granted a new trial upon concluding that: "[s]ince the uncontroverted evidence established that [Zach] would have a permanent scar that continues to affect and bother him, a jury's finding that [he] will suffer no disfigurement in the future is against the overwhelming, great weight and preponderance of the evidence" and "[t]he jury's award of $0.00 for the element of damage for future disfigurement is inadequate." Since then, though, it apparently reconsidered the merits of that conclusion and Zach's request. It did that after complying with our *3 Atoms* directive to vacate the new trial order and after Zach again moved for new trial. His renewed motion was founded upon the same grounds as his first. And, while the trial court convened a hearing on it and entertained arguments from counsel, it did not grant the request. Instead, it allowed the motion to be overruled by operation of law.

It may be that Zach questions the accuracy of the decision to deny the motion. Yet, he does not question the trial court's plenary jurisdiction over the cause at the time. Similarly unquestioned is that legal authority permits a trial court to reconsider its interlocutory orders during the period in which it retains plenary jurisdiction over a cause, and a decision granting a new trial is one such order. *See Hidalgo v. Hidalgo,* 310 S.W.3d 887, 889 (Tex. 2010); *Fruehauf Corp. v. Carrillo*, 848 S.W.2d 83, 84 (Tex. 1993) (so holding). That, in effect, is what the trial court did here.

---

[1] The decision to grant relief was based upon a defect in the form of the order; according to the majority, the "new-trial order . . . neither pointed to the evidence that played a pivotal role in its decision to grant a new trial . . . nor explained how the evidence recited in the order . . . undermines the jury's zero-dollars answer." *In re 3 Atoms, LLC*, 2019 Tex. App. LEXIS 7186, at *7.

The *3 Atoms* majority did not tell the trial court that the grounds it relied upon in granting a new trial were meritless. Again, the underlying merits of the petition for writ of mandamus were not considered. The Court simply deemed the order granting new trial invalid due to a defect in form. Ultimately, it lay with the trial court to decide whether a new trial was or was not appropriate for the reasons urged in the motion. In allowing the motion to be denied by operation of law, it presumably decided that the grounds did not warrant one.

So, the live controversy actually involves the propriety of the trial court denying a new trial. Our decision about the defectiveness of the initial order in *3 Atoms* is moot. *See Tex. Health Care Info. Council v. Seton Health Plan*, 94 S.W.3d 841, 846–47 (Tex. App.—Austin 2002, pet. denied) (stating that a matter becomes moot when its resolution cannot have any practical legal effect). In other words, it matters not whether the majority in *3 Atoms* was wrong given that the trial court had plenary jurisdiction to reconsider its new trial decision and did so adversely to Zach. So, we overrule Zach's issue regarding the accuracy of *3 Atoms*.[2]

*Denying New Trial*

Through the remaining issues, Zach argues that the trial court erred in denying him a new trial on the issue of future damages for physical impairment, pain and suffering, physical disfigurement, and mental anguish related to disfigurement. Purportedly, a new

---

[2] There is suggestion that the trial court should have simply substituted its original order granting new trial with another that addressed the deficiencies discussed in *3 Atoms*. That is not what this Court ordered the trial judge to do. The latter was told to vacate its order, which it did. Nothing in *3 Atoms* mandated it to merely substitute the original order with another or otherwise barred the trial court from reconsidering the substance of its original decision.

trial was warranted because the jury's verdict denying such damages was against the great weight and preponderance of the evidence. We overrule the issues.

Again, the underlying suit began with an injury suffered by the minor victim, Zach. He apparently struck his head on a metal post affixed to a trampoline. On behalf of the youth, Gonzales sued several entities, including 3 Atoms and Fun. Settlement was reached with at least one of the defendants and the remaining claims were tried to a jury. The jury returned its verdict awarding Zach damages for pain, mental anguish, physical impairment, and disfigurement suffered in the past. Yet, no damages were awarded for future pain, mental anguish, impairment and disfigurement. It is those findings which underlie our effort to assess whether a new trial should have been granted. Zach believes them to be against the great weight and preponderance of the evidence and argues that the trial court should have granted a new trial.

The standard of review applicable here is one of abused discretion. *Dolgencorp of Tex., Inc. v. Lerma*, 288 S.W.3d 922, 926 (Tex. 2009) (so stating when reviewing a decision denying a motion for new trial). Such an abuse occurs when the court acts unreasonably, arbitrarily, or without reference to guiding rules or principles. *Balderas v. Fullingim*, No. 07-16-00388-CV, 2018 Tex. App. LEXIS 5822, at *9–10 (Tex. App.—Amarillo July 26, 2018, no pet.) (mem. op.). Next, the tenor of the attack levied by Gonzales is one of factual sufficiency. The latter is not an independent ground for reversal in the abuse of discretion analysis. *In re Vick*, No. 07-18-00037-CV, 2019 Tex. App. LEXIS 8552, at *3 (Tex. App.—Amarillo Sept. 23, 2019, no pet.) (mem. op.). Rather, it is a component of the overall analysis. *Id.* That is, whether or not the evidence is factually

5

sufficient influences whether the trial court abused its discretion. So, the test for assessing the factual sufficiency of the evidence is relevant.

Per that test and when a party challenges the factual sufficiency of an adverse finding on an issue on which he had the burden of proof, the party must demonstrate that the finding was against the great weight and preponderance of the evidence. *Balderas,* 2018 Tex. App. LEXIS 5822, at *8. And, when the finding under attack relates to an award of zero damages for a particular injury, our duty is to consider only whether the evidence unique to that category of damages is so against the great weight and preponderance of evidence as to render it manifestly unjust, shocking to the conscience, or clearly bias. *Id.* at *8–9 (quoting *Golden Eagle Archery, Inc. v. Jackson,* 116 S.W.3d 757, 775 (Tex. 2003)). Caution must also be taken against merely concluding that because there is objective evidence of an injury, the zero finding is against the great weight and preponderance of the evidence. *See id.* at *9 (stating that "courts should not conclude that a jury's failure to award any damages for physical impairment is against the great weight and preponderance of the evidence simply because there is objective evidence of an injury"). Finally, an award of no damages may be challenged if there is objective, undisputed testimony of a significant injury and the jury could not have compensated the injured party in some other category of damages. *Id.* With this said, we turn to Zach's arguments.

Regarding physical disfigurement, no one disputes that the teenager suffered surgical scarring as a result of the accident. The scarring appeared on the right side of his head. Its presence bothered the young man because it induced people to ask, "what happened" and he "really [didn't] like telling people . . . what happened." It led him to

believe they thought something was wrong with him.  So, because it did not look good, effort was made to cover it by allowing his hair to grow.  Eventually, though, he realized he had to "adapt to [it], and it's going to be there for a while."

Zach's father confirmed not only that the scarring led to Zach letting his hair grow but also his growth in confidence.  He described the situation as Zach "finally gain[ing] enough confidence where, you know, 'I can' – 'I can deal with this now.  I can deal with the questions.  I can deal with people staring at me.'"  It still affects the youth, however, and his father did not want Zach to have to explain the reason for the scarring "the rest of his life."

Disfigurement means that which impairs or injures the beauty, symmetry, or appearance of a person or which renders a person unsightly, misshapen or imperfect, or deforms in some manner.  *Goldman v. Torres*, 341 S.W.2d 154, 160 (Tex. 1960); *accord McKnight v. Calvert*, 539 S.W.3d 447, 459 (Tex. App.—Houston [1st Dist.] 2017, pet. denied) (stating the same).  Surgical scarring falls into that category.  *See, e.g.*, *Marquette Transp. Co. Gulf-Inland, LLC v. Jackson,* No. 01-10-01025-CV, 2012 Tex. App. LEXIS 3265, at *39–40 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (mem. op.) (so noting); *Wal-Mart Stores, Inc. v. Tinsley,* 998 S.W.2d 664, 673 (Tex. App.—Texarkana 1999, pet. denied) (noting the existence of cases upholding past and future disfigurement awards for surgical scars); *Hopkins Cty. Hosp. Dist. v. Allen,* 760 S.W.2d 341, 343 (Tex. App.—Texarkana 1988, no writ.) (involving sponge removal from an abdomen and the ensuing scars).  Furthermore, additional scarring or deforming is not required to recover damages for future disfigurement, although it may be a factor in determining the extent of the damages.  *Hopkins Cty. Hosp. Dist.*, 760 S.W.2d at 344.  Other indicia relevant to the

inquiry is embarrassment and shame arising from the scars. *In re Noble*, No. 06-16-00032-CV, 2016 Tex. App. LEXIS 11954, at *21 (Tex. App.—Texarkana Nov. 4, 2016, pet. denied) (mem. op.); *Hopkins Cty. Hosp. Dist.*, 760 S.W.2d at 344. As observed in *Hopkins*, "[p]laintiffs who feel ugly, who hide their disfigurement . . . may recover future disfigurement damages absent evidence that there will be further scarring or deforming." *Hopkins Cty. Hosp. Dist.*, 760 S.W.2d at 344. However, this is not to say that embarrassment or shame is a prerequisite to recovering for disfigurement, past or present. Simply put, no mathematical yardstick exists by which one can measure damages for it. *Critical Path Res., Inc. v. Cuevas*, 561 S.W.3d 523, 570 (Tex. App.—Houston [14th Dist.] 2018 pet. filed). And, the award depends on the circumstances of each case.

Here, the jury had before it evidence of scarring on Zach's head and effort to hide it. The scar was troubling and a reminder to him of the accident. Common knowledge and experience further indicates that scars may remain long after the injury heals. Yet, also heard by the jury was testimony about Zach gaining in confidence and striving to overcome his circumstances. So too had the trial court instructed the jury to "not compensate twice for the same loss, if any." This is of import since the scarring, its extent and its effect may have been factors deemed relevant by the jury in awarding him damages for past disfigurement. *See, e.g.*, *Mauricio v. Cervantes*, No. 04-16-00260-CV, 2017 Tex. App. LEXIS 5932, at *9–10 (Tex. App.—San Antonio June 28, 2017, no pet.) (mem. op.) (involving an award for past disfigurement but not future and intimating that because the jury was instructed to avoid compensating twice for the same loss, it may have compensated for the scar's permanency through its award for past disfigurement).

And, that his embarrassment from and frustration with explaining the scar had diminished over time may have influenced the jury's decision. *See id.* (noting the absence of evidence that the plaintiff would suffer embarrassment from the scar in the future).

So, the totality of the evidence concerning future disfigurement is not uncontroverted. That and the absence of a mathematical yardstick controlling the relevant calculation leads us to conclude that the jury's decision to deny Zach recovery for future disfigurement was not so against the great weight and preponderance of the evidence as to render the decision manifestly unjust or an instance of clear bias.

What we conclude about future disfigurement is no less true for future mental anguish. The latter lay within the jury's province, as did the other categories of damage. *Marvelli v. Alston*, 100 S.W.3d 460, 482 (Tex. App.—Fort Worth 2003, pet. denied). Moreover, future anguish, pain, and impairment are prospective by definition and, therefore, based on probabilities. *Goldberg v. Dicks*, No. 12-02-00053-CV, 2004 Tex. App. LEXIS 1258, at *51 (Tex. App.—Tyler Feb. 11, 2004, pet. denied) (mem. op.). And, irrespective of whether it is past or future anguish, one uses the same measure for each. *Id.* That measure requires either 1) direct evidence of anguish which substantially disrupts the plaintiff's daily routine or 2) other evidence of a high degree of mental pain and distress evincing more than mere worry, anxiety, vexation, embarrassment, or anger. *Id.*; *accord Hancock v. Variyam*, 400 S.W.3d 59, 68 (Tex. 2013) (stating that mental anguish is only compensable if it causes a substantial disruption in the claimant's daily routine or a high degree of mental pain and distress).

The evidence of mental anguish upon which Zach relies consists of his head injury, scarring, brain trauma, frustration with delays in schooling caused by the accident, and

9

aggressive acts directed at his brother. No doubt the scarring will persist for some time after trial. Whether his frustration with delays in schooling will continue is unknown, given evidence of record indicating that he is matriculating through his school years. Yet, frustration alone does not necessarily equate to mental anguish. *See Parkway Co. v. Woodruff*, 901 S.W.2d 434, 445 (Tex. 1995) (observing that the frustration, anger, and vexation exemplified by the claimant did not arise to a compensable level). Furthermore, it may be overcome. And, as discussed earlier, the jury heard how Zach is growing in confidence and learning to deal with or accept his circumstances.

Other evidence of record also revealed that the youth's brain trauma was "complicated" but "mild," and mild to moderate brain injury may improve overtime. So too did one expert find Zach to be a unique 14 year old in the sense that he was polite and respected adults. That same expert also opined that he encountered no signs of Zach experiencing irritability during his interview with the youth.

Another expert proffered the opinion that Zach's mindset and aggressiveness may be unrelated to the accident but triggered by distinct events. Those events include his brother leaving for college, an uncle dying, and Zach entering high school. So too did this expert opine that Zach suffered from no continued impairments and was no longer undergoing counseling for aggressiveness. Nor did the teen have continuing problems with sleep, his parents, siblings, or peers, according to the witness.

As can be seen from our description of the evidence, it does not necessarily reveal that Zach will face a substantive probability of continued disruption to his daily routine or a high degree of mental pain or distress in his coming days or years. Given this, we must

again conclude that the jury's award of zero was not manifestly unjust, shocking to the conscience, or demonstrative of bias.

Regarding future pain and suffering, the evidence again is mixed. The pain and suffering alluded to concerned headaches. Zach apparently testified that he continued experiencing them after engaging in physical activities. Other evidence indicates they had diminished in frequency. According to one medical record, Zach denied not only having them or visual disturbances but indicated he remained active in both basketball and baseball. His father even reported that Zach had no other pain, when questioned by medical personnel. This leads us to the same conclusion we arrived at concerning disfigurement and anguish. We cannot say the jury's decision to award him no damages for future pain and suffering was wrong or manifestly unjust, given the mixed evidence at bar.

As for impairment, the evidence tends to contradict Zach's suggestion of same. The alleged impairment concerned sports, in general, and football, in particular. Apparently, Zach enjoyed the latter and no longer participated in it. Yet, he still participated in basketball, baseball, and track. And, because he found a talent in running, he chose to focus on that sport even though he knew he could play others. Nor must the jury have ignored the aforementioned testimony from a medical practitioner about Zach suffering no impairments to his daily life. Finally, the choice to bar Zach from playing football was his parents', "[e]ven if the – even if the doctor says he can." Again, the mélange of controverted evidence prevents us from deeming the jury's verdict about future impairment as against the great weight and preponderance of the evidence.

11

In short, the trial court had before it a mixed bag of evidence touching upon each category of damage under consideration. That evidence being mixed, its decision to overrule the motion for new trial on the grounds urged by Zach was reasonable. Thus, it did not abuse its discretion.

The judgment of the trial court is affirmed.


Brian Quinn
Chief Justice