**Opinion issued August 3, 2023**



In The

# Court of Appeals

For The

# First District of Texas

———————————

**NO. 01-22-00632-CV**

———————————

**CITY OF HOUSTON, Appellant**

**V.**

**MARY WALKER, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF ROBERT MILTON WALKER, JR., DECEASED, Appellee**

---

**On Appeal from the 215th District Court**
**Harris County, Texas**
**Trial Court Case No. 2021-62327**

---

**MEMORANDUM OPINION**

In this accelerated interlocutory appeal, the City contends the trial court erred

in denying its motion for summary judgment premised on governmental immunity.

We agree. We therefore reverse the trial court's order denying summary judgment and render judgment dismissing this lawsuit for lack of subject-matter jurisdiction.

## BACKGROUND

### Walker's Lawsuit

Walker sued the City. She alleges that it negligently caused the death of her husband, who died as a result of injuries he sustained in a two-vehicle automobile accident involving himself and a nonparty and later medical malpractice committed by another nonparty who treated her husband's injuries. The accident took place not long after midday at the intersection of Hughes Road and Beamer Road. According to Walker's allegations, her husband entered the intersection while the traffic light in his direction was green. The other driver likewise claims that the traffic light in his direction—perpendicular to Walker—was green at the time of the accident.

Walker alleges that her husband's fatal collision was one of three collisions at this particular intersection that day. She further alleges that the City was both aware of the other two collisions and the cause of those collisions, which she characterizes as "a problem with the traffic lights." According to Walker, the City did not fix the problem with the traffic lights until after her husband's collision had occurred.

Specifically, Walker alleges the City was negligent in failing to properly set, monitor, and maintain the traffic-light louvers, which are slats affixed to the lights that affect when approaching drivers can discern the color of the lights. Walker also

2

invokes the doctrine of *res ipsa loquitor*, a Latin phrase meaning *the thing speaks for itself*, alleging the circumstances of the accident show the City was negligent.

Walker acknowledges that the City generally has governmental immunity, but she alleges the legislature has waived this immunity here. In support, Walker cites sections 101.021 and 101.025 of the Texas Civil Practice and Remedies Code, which are provisions of the Texas Tort Claims Act that together state governmental immunity is waived to the extent specified in the Act and waive governmental immunity when personal injury or death is caused by a condition or use of tangible property to the same extent a private person would be liable under Texas law.

### City's Summary-Judgment Motion

The City later filed a motion for summary judgment followed by an amended motion for summary judgment. In its amended motion, the City argued that the evidence shows the Texas Tort Claims Act does not waive its governmental immunity from suit and liability in this instance for two independent reasons.

First, the City invoked section 101.056 of the Act, which generally provides that the Act does not waive governmental immunity for discretionary acts. The City argued that the installation of louvers is a safety measure used on some traffic lights and not others in the exercise of its discretion. As the evidence shows that the installation of the louvers is discretionary, the City concluded, it is immune from Walker's claims that it negligently set them. Further, the City argued that Walker

3

does not truly state claims for negligent monitoring or maintenance of the louvers and the evidence shows that the City did not negligently monitor or maintain them.

In support of its discretionary-act argument, the City attached an affidavit made by Fabio Capillo. Capillo is the assistant director and custodian of records for the City's traffic maintenance branch, which maintains transportation infrastructure, including traffic lights. In his affidavit, Capillo stated that a design engineer, Klotz and Associates, installed the louvers on the traffic lights in question in the early 1990s. Capillo elaborated that Klotz and Associates did so at the direction of METRO, the Texas governmental agency responsible for making decisions of this sort. The City, however, is responsible for the maintenance of the traffic lights.

In the direction in which Walker's husband was driving, he encountered two sets of traffic signals in quick succession regulating movement across a bridge that is bisected by cross-streets on either end. In other words, there are two intersections at this location. The accident at issue occurred in the second of these intersections.

The purpose of the louvers, Capillo explained, is to limit the ability of a driver to discern the color of the traffic lights so that he or she only sees the ones that apply to the immediate intersection. About the two intersections, Capillo elaborated:

> [Here], the safety louvers are located on only the second set of traffic signal heads. The louvers totally block the driver's view of the second set of traffic signal heads as the driver approaches the first set of traffic signal heads. The safety louvers were installed so drivers see only the traffic signal heads which apply to the immediate intersection. Only after passing the first set of traffic signal heads and entering the bridge

4

is the driver able to view the color of the light on the second set of traffic signals. Because the drivers are not able to see both sets of the traffic signal heads from a distance, this encourages and promotes drivers to reduce the speed of their vehicles on approach to the intersection until they are able to see the color of the second set of traffic signal heads.

Capillo further explained that the louvers are made of plastic and metal and are mounted in place with machine screws. The louvers are not connected to the electronics that control the traffic lights, and the louvers do not have any connection with the color of the lights or control which color the lights display at any given time. Thus, the louvers do not affect the way in which the two sets of traffic lights at these intersections synchronize. Once installed, the louvers are stationary and not powered to move. So, adjustments are seldom required, and making adjustments requires two people, one of whom must access the louvers via a bucket truck.

According to Capillo, employees performed routine maintenance checks of the safety louvers, which included visual inspection as well as confirmation that they were in the proper position when approached on the street. The day after the accident involving Walker's husband, employees inspected the safety louvers, and they determined that no adjustments to the louvers were needed as the louvers were properly positioned. Previously, about seven and a half months before the accident, employees inspected the louvers, which were properly positioned at that time.

Second, the City invoked section 101.060 of the Act, which generally provides that the Act does not waive governmental immunity for claims about the

condition of a traffic light unless the City was notified of the condition at issue and failed to correct it within a reasonable time. The City argued the evidence shows that no one notified it of a problem relating to the safety louvers at the intersection where the accident involving Walker's husband took place before that accident occurred.

In support of its notice argument, the City relied on another affidavit made by Capillo. In this affidavit, Capillo stated that there are no records reflecting that anyone had reported an issue concerning the timing of traffic lights or conflicting traffic lights at the intersection on the day of the accident involving Walker's spouse before the accident happened. Indeed, he stated that there had been no such complaints or requests for repairs of this nature within a three-month period preceding the accident. According to Capillo, in the six months preceding the accident, there were just four maintenance records concerning the intersection: two for all traffic lights at the intersection being out due to loss of power, one for a green light of insufficient duration due to a damaged pedestrian crosswalk push button, and one for a green light of insufficient duration that was found to be meritless. None of these complaints was made in the same month as the accident in question.

The City also relied on a declaration made by T. Ray Taylor, the administrator for the City's service help line. He searched the records relating to service requests for the intersection. Taylor stated that there are no records of calls to the service line on the day of the accident before it happened. For the six months preceding the

6

accident involving Walker's husband, there are five records, none of which concerned the traffic light's louvers. These records were affixed to Taylor's affidavit, which he produced as the custodian of records for these documents.

## Walker's Summary-Judgment Response

In response to the City's motion, Walker argued it knew of the problematic condition of the louvers she alleged, citing service help-line records produced in discovery. One of these records documents a service request made the same day as the accident, in which the person requesting service said there had been three accidents that day and attributed them to the louvers, which reportedly made it impossible for drivers to tell whether the traffic lights were red or green. Walker also relied on a record for a service request made the day after the accident, in which the person requesting service said the louvers needed to be removed or adjusted because they prevented drivers from seeing the color of the traffic lights until the last minute.

Walker attached these service-request records to her summary-judgment response. The first record shows the service request was made by someone a little more than an hour after the accident involving Walker's husband had already taken place. The second record shows the service request was made the day afterward.

In addition, presumably in support of her *res ipsa loquitor* allegation, Walker noted in her summary-judgment response that there had been three accidents at the intersection on the same day, the one in which her husband was involved, one

beforehand, and one afterward. Both of the aforesaid service-request records Walker attached to her response refer to three accidents having happened there the same day.

Finally, Walker argued that section 101.060 of the Texas Tort Claims Act—the notice provision—was inapplicable to her claims. She maintained that this provision, which applies to situations in which a claim arises from a traffic signal's absence, condition, or malfunction, is categorically inapplicable to her claim, which is founded on the City's negligent failure to set, monitor, and maintain louvers.

### City's Supplemental Summary-Judgment Evidence and Reply

The City filed a supplemental brief including some additional evidence. This additional evidence included the peace officer's crash report for the accident that occurred before the one in which Walker's husband was involved. In that report, the peace officer noted that one of the two drivers involved had run a red traffic light.

The City also replied in support of its amended summary-judgment motion. In its reply, the City argued that Walker's evidence did not defeat its entitlement to summary judgment because service requests made after her husband's accident occurred cannot establish prior notice of the condition about which she complains.

### Trial Court's Ruling

The trial court entered a written order denying the City's amended summary-judgment motion. The trial court did not specify the grounds for its decision.

## DISCUSSION

The City contends the trial court erred in denying its amended summary-judgment motion. For the reasons relied on below, the City maintains that the legislature has not waived its governmental immunity as concerns Walker's claims.

### Standard of Review

A defendant may challenge the trial court's subject-matter jurisdiction, including challenges premised on governmental immunity, via a motion for summary judgment. *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019). When a defendant challenges jurisdictional facts through a motion for summary judgment, we review all the evidence in the light most favorable to the plaintiff to determine whether a genuine issue of material fact as to jurisdiction exists. *See* TEX. R. CIV. P. 166a(c); *see also Swanson*, 590 S.W.3d at 550 (noting that traditional summary-judgment standard is also applied when defendant challenges jurisdictional facts with supporting evidence via plea to jurisdiction).

The City moved for traditional summary judgment. Thus, it bore the burden to produce evidence showing that no genuine issue of material fact exists on the issue of jurisdiction and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). If the City carried its burden of proof, then Walker was required to produce enough evidence to show there is a disputed material fact about jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004). We review

9

de novo whether the parties carried their respective summary-judgment burdens and thus whether or not the City is entitled to summary judgment. *See Yowell v. Granite Operating Co.*, 620 S.W.3d 335, 343 (Tex. 2020) (stating that trial court's summary-judgment rulings are subject to de novo review); *see also City of Houston v. Williams*, 353 S.W.3d 128, 133 (Tex. 2011) (reviewing de novo whether city's governmental immunity deprived trial court of subject-matter jurisdiction).

## Applicable Law

As a municipality and subdivision of the state, the City of Houston generally possesses governmental immunity, which immunizes it from suit and liability. *City of Houston v. Lal*, 605 S.W.3d 645, 648 (Tex. App.—Houston [1st Dist.] 2020, no pet.). Under certain circumstances, the Texas Tort Claims Act waives this immunity. *See id.*; *see also* TEX. CIV. PRAC. & REM. CODE §§ 101.001–101.109 (the Act).

Section 101.021(2) of the Act waives governmental immunity for death and personal injury caused by the wrongful act or omission or negligence of a governmental employee acting within the scope of his employment when the death or personal injury is "caused by a condition or use of tangible or real property if the governmental unit would, were it a private person, be liable" under Texas law. *See* TEX. CIV. PRAC. & REM. CODE § 101.021(2) (stating governmental units are liable in these circumstances); *id.* § 101.025 (waiving immunity to extent liability is created under this chapter so that person having such claim may sue governmental units).

The Act also contains exclusions and exceptions to its waivers of governmental immunity. *Id.* §§ 101.051–.067. When one of these exclusions or exceptions applies, the governmental unit retains immunity. *Id.* One set of exclusions or exceptions applies to traffic- and road-control devices. *Id.* § 101.060. In relevant part, the Act does not waive governmental immunity when a claim arises from "the absence, condition, or malfunction of a traffic or road sign, signal, or warning device unless the absence, condition, or malfunction is not corrected by the responsible governmental unit within a reasonable time after notice." *Id.* § 101.060(a)(2); *see State ex rel. State Dep't of Hwys. & Pub. Transp. v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002) (governmental unit retains immunity when § 101.060(a)(2) applies).

In other words, section 101.021(2) of the Act waives governmental immunity with respect to injuries caused by conditions of tangible property, while section 101.060(a)(2), in turn, limits that waiver with respect to traffic-control signals to conditions not corrected within a reasonable time after notice. TEX. CIV. PRAC. & REM. CODE §§ 101.021(2), 101.060(a)(2). Thus, these two provisions together establish the scope of governmental immunity in cases that turn on the condition of traffic lights. *See Harris Cty. v. Shook*, 634 S.W.3d 942, 953–54 (Tex. App.—Houston [1st Dist.] 2021, pet. denied) (reading §§ 101.021(2) and 101.060(a)(2) as waiving immunity only when governmental unit had notice of condition at issue).

11

The term *condition* is not defined by the Act. But based on context, our Supreme Court has held that a condition consists of something wrong that requires correction after the relevant governmental unit is notified about it. *Dep't of Transp. v. Garza*, 70 S.W.3d 802, 807 (Tex. 2002). Thus, in general, a condition exists only when a traffic signal is unable to convey the intended traffic-control information or conveys traffic-control information other than what was intended. *Id.* If, however, a traffic signal accurately conveys the very traffic-control information the governmental unit intended the signal to convey, then a condition does not exist and there is no waiver of governmental immunity under the Act. *Id.* at 808; *see also Gonzalez*, 82 S.W.3d at 327 (stating that Act's exclusion or exception for traffic-control signals in § 101.060(a)(2) requires governmental unit to maintain these signals in condition sufficient to perform their intended traffic-control function).

Notice of a qualifying condition may be actual or constructive. *Shook*, 634 S.W.3d at 954. Constructive notice is notice the law imputes to a governmental unit in certain circumstances when it lacks personal information or knowledge. *McKnight v. Calvert*, 539 S.W.3d 447, 455 (Tex. App.—Houston [1st Dist.] 2017, pet. denied). In general, a governmental unit has constructive notice of a condition when facts or inferences show the unit had reason to know a condition existed. *Id.* at 456.

Another exclusion or exception concerns policy decisions. The Act does not waive governmental immunity for claims based on the failure of a governmental unit

12

to perform an act it is not legally required to perform. TEX. CIV. PRAC. & REM. CODE § 101.056(1). Similarly, the Act does not waive immunity for claims based on a governmental unit's decision not to perform an act, or its failure to make a decision on performance or nonperformance of an act, if the law leaves the performance or nonperformance of the act to the governmental unit's discretion. *Id.* § 101.056(2).

In the context of traffic-control signals, the exclusion or exception for policy decisions or discretionary acts generally preserves governmental immunity with respect to claims based on design decisions and decisions as to whether to use specific safety features. *See, e.g.*, *Gonzalez*, 82 S.W.3d at 326 (stating § 101.056 excepts discretionary policy decisions, including "decisions about highway design or what types of safety features to install" from Act's waiver of governmental immunity). It is not the role of Texas courts to second-guess a governmental unit's decision as to the type of marker or safety device that is most appropriate for regulating traffic. *State v. Miguel*, 2 S.W.3d 249, 251 (Tex. 1999) (per curiam); *see also Nguyen v. SXSW Holdings*, 580 S.W.3d 774, 783 (Tex. App.—Houston [14th Dist.] 2019, pet. denied) (courts recognize that decision whether to install traffic-control measures involves exercise of governmental unit's discretionary powers).

**Analysis**

Walker does not complain of the City's decision to use safety louvers on traffic lights in general or on the particular traffic lights at the intersection at issue.

13

She also does not claim that the City's use of louvers, standing alone, created an unsafe condition that caused her late husband's accident. A claim of this sort, which implicates the design of the traffic lights or the decision to fit them with a specific safety feature, would not be cognizable because the Texas Tort Claims Act does not waive governmental immunity for claims relating to design decisions or decisions to use or refrain from using a safety feature. *See, e.g.*, *Miguel*, 2 S.W.3d at 251 (holding that state's decision to use barrels to warn motorists, as opposed to negligent placement of barrels, was discretionary decision for which state retained immunity); *City of Midland v. Sullivan*, 33 S.W.3d 1, 14–15 (Tex. App.—El Paso 2000, pet. dism'd w.o.j.) (holding that city's design of crosswalk, as opposed to city's implementation of design and maintenance of crosswalk, involved discretionary decision for which city retained governmental immunity from suit).

Instead, Walker alleges that the City negligently set, monitored, or maintained the louvers, which resulted in there being something wrong with the traffic lights. Specifically, she maintains that the negligent setting, monitoring, or maintenance caused the louvers to be in a condition that made it impossible for drivers, like her late husband, to discern the color of the traffic lights until it was too late to react. This sort of claim is cognizable, as it fits within the Texas Tort Claims Act's waiver of immunity for conditions negligently caused by the governmental unit, provided that the governmental unit failed to correct the condition after receipt of notice. *See*

14

TEX. CIV. PRAC. & REM. CODE §§ 101.021(2), 101.060(a)(2); *see also Stephen F. Austin State Univ. v. Flynn*, 228 S.W.3d 653, 657 (Tex. 2007) (Act preserves immunity for negligent formulation of policy but not for negligent implementation); *Smith v. Galveston Cty.*, 326 S.W.3d 695, 699–700 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (Act does not preserve immunity for negligent policy implementation, like negligent maintenance); *Tex. Dep't of Transp. v. Olivares*, 316 S.W.3d 89, 100 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (Act does not preserve immunity for negligent policy implementation, like negligent construction of retaining wall).

But the City supported its summary-judgment motion with evidence that contradicts Walker's allegations. In an affidavit, Capillo, who is the assistant director of the branch of the municipal government responsible for maintaining transportation infrastructure, stated that the purpose of safety louvers is to obscure the color of traffic lights from drivers, so that drivers must slow their speed to discern whether the signal is red, yellow, or green as they approach the intersection in question. In other words, the City concedes that the safety louvers obscure the color of the traffic lights and maintains—with supporting evidence—that this is the very purpose for which the louvers are designed, reflecting a conscious choice on the City's part as to which safety features are appropriate to regulate traffic, which is a policy matter within the City's discretion and for which the Texas Tort Claims Act thus does not waive governmental immunity. *See, e.g.*, *Nguyen*, 580 S.W.3d at 783–

15

84 (governmental units retain immunity from suit and liability under Act with respect to decisions about which safety features to implement or not implement).

Capillo further stated that the louvers were inspected the day after the accident involving Walker's husband, and it was determined at this time that the louvers were set as intended and no correction was needed. In addition, Capillo stated the louvers are secured in place with machine screws and can only be adjusted manually, as they are not tied into the traffic signal's electronics, which gives rise to an inference that the position of the louvers on the day of the accident was not different from their position when they were inspected the following day. Hence, the City satisfied its burden to produce evidence showing that its setting, monitoring, or maintenance of the safety louvers did not cause the traffic signal to require any correction and thus no condition existed that would waive governmental immunity under the Act. *See Garza*, 70 S.W.3d at 808 (plaintiffs did not allege condition for which governmental immunity had been waived in suit in which it was undisputed that sign accurately conveyed information department of transportation intended sign to convey); *Olivares*, 316 S.W.3d at 101 (holding that allegations that governmental unit used confusing and misleading traffic signs, signals, and devices was not claim involving condition for which legislature had waived governmental immunity).

Given the City's summary-judgment evidence, the burden shifted to Walker to adduce some evidence creating a genuine issue of material fact supporting her

16

allegation that the condition of the safety louvers resulted from negligence of some kind rather than the City's intended policy. *See Miranda*, 133 S.W.3d at 228 (stating if movant carries traditional summary-judgment burden, then nonmovant must produce enough evidence to show material factual dispute on jurisdictional issue in case involving plea to jurisdiction supported by evidence challenging jurisdictional facts). But Walker did not introduce any evidence of this kind. Consequently, the trial court erred in denying the City's motion for summary judgment premised on governmental immunity. Therefore, we sustain the City's sole issue on appeal.

## CONCLUSION

We reverse the trial court's order denying the City's summary-judgment motion premised on its governmental immunity from suit, and we render judgment dismissing Walker's suit against the City for lack of subject-matter jurisdiction.

Gordon Goodman
Justice

Panel consists of Justices Goodman, Landau, and Rivas-Molloy.